[Civ. No. 37507. First Dist., Div. Three. Aug. 2, 1976]

JOEL A. SHAWN et al., Plaintiffs and Appellants, v.
GOLDEN GATE BRIDGE, HIGHWAY AND
TRANSPORTATION DISTRICT et al., Defendants and Respondents.

### COUNSEL

Joel A. Shawn, City Attorney, Kipperman, Shawn & Keker and William A. Brockett for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Nicholas C. Yost and Norman N. Flette, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Hanson, Bridgett, Marcus & Jenkins, Hanson, Bridgett & Marcus, William J. Bush and David J. Miller for Defendants and Respondents.

### OPINION

**DRAPER, P. J.**—This appeal raises the question whether the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) applies to the decision of Golden Gate Bridge, Highway and Transportation District (District) to increase fares for travel upon a bus line operated by the district. The parties largely argue the case as though the issue were whether an environmental impact report (EIR) is required. But applicability of the act does not automatically require preparation of an EIR. Rather, it but requires the District to make determinations required by

the "three-tiered structure" established by CEQA and the guidelines issued to implement it (*No Oil, Inc.* v. *City of Los Angeles,* 13 Cal.3d 68, 74 [118 Cal.Rptr. 34, 529 P.2d 66]). Since the District directors made no determination as to any of the three steps of that procedure, we reverse the judgment. But at this demurrer stage we do not, of course, hold that neither the first nor second steps of the *No Oil* procedure may eliminate the need for an EIR.

District operates a passenger bus line between San Francisco and northern Sonoma County. On June 13, 1975, its directors voted to increase bus fares and alter fare zones. The increases, which have not yet been put into effect, would raise passenger fares by a minimum of 10 cents for a trip within San Francisco, to a maximum of 50 cents for a trip between San Francisco and northern Sonoma County. So far as shown by the record before us, the directors' action made no mention of any impact upon the environment. Plaintiffs, a taxpayer and the Town of Corte Madera, petitioned for writ of mandate directing the district to refrain from imposing the increased fares until compliance with CEQA. They alleged that the increased rates would cause bus passengers to resort to use of their private automobiles, thus adversely affecting the environment by increasing traffic congestion, air pollution, and "unnecessary and excessive consumption of hydrocarbon fuels." Defendants' demurrer was sustained without leave to amend. Plaintiffs appeal from the ensuing judgment of dismissal.

CEQA extends to all local agencies as to "any project they intend to carry out . . . which may have a significant effect on the environment" (Pub. Resources Code, § 21151). It is undisputed that District is a "local agency" within the meaning of this section. If the fare increase is a "project" within the meaning of section 21151, the question whether it has a significant impact upon the environment is not now before us, but must first be passed upon by district. The limited issue before us is whether the increase is a "project."

"Project," as here relevant, is defined as "[a]ctivities directly undertaken by any public agency." (§ 21065, subd. (a).) As the Supreme Court has pointed out, this language defines the word "so broadly that it covers activities having no conceivable effect upon the environment." (*Bozung* v. *Local Agency Formation Com.,* 13 Cal.3d 263, 277, fn. 16 [118 Cal.Rptr. 249, 529 P.2d 1017].) This definition is refined and limited by guidelines adopted pursuant to the act (Cal. Admin. Code, title 14, ch. 3,

§ 15000 et seq.). But setting of transportation rates is not among the categorical exemptions from the requirements of CEQA. Respondents point to one section of the guidelines (§ 15037, subd. (b)(3)). But increase of rates is hardly included within "continuing administrative or maintenance activities, such as purchases for supplies, personnel-related actions, emergency repairs to public service facilities." And the exemption of "general policy and procedure making" can hardly, in the context of the cited section, be extended to cover an increase in rates. This is particularly true in light of the opening sentence of section 15037 which defines project as "the whole of an action, which has a potential for physical impact on the environment, directly or ultimately" and in light of the allegations of the complaint that specific impacts of this sort do exist.

Persuasive, at first glance, is respondents' argument that its fare increase in no way relates to the alteration, zoning or use of land, whereas the cases heretofore applying the CEQA all have dealt with some form of land use. But Appendix F to the guidelines now refers to "energy conservation measures," and "rate structures which discourage unnecessary energy consumption." Moreover, no reported decision limits CEQA as respondents would have us do. Lacking California decision upon the subject, we turn to the federal act (National Environmental Policy Act) for guidance. (*Friends of Mammoth* v. *Board of Supervisors*, 8 Cal.3d 247, 260-261 [104 Cal.Rptr. 761, 502 P.2d 1049].) The federal act clearly applies to rate-making (e.g., *Aberdeen & Rockfish R. Co.* v. *SCRAP*, 422 U.S. 289 [45 L.Ed.2d 191, 95 S.Ct. 2336]). Respondents argue without citation of authority that these holdings stem from language of NEPA extending it to "policy and procedure." By an intricate tracing through the Federal Register, the Code of Federal Regulations and the Federal Administrative Procedure Act, they reason that these terms include the making of rules, rules includes fixing of rates, and thus in omitting "policy and procedure" from CEQA, the Legislature meant to exclude rate fixing. With the utmost respect for the legal acumen and industry of the Legislature, we find it difficult to accept this view. As noted, the guidelines do refer to "rate structures." It is, of course, distinctly possible that the Legislature may determine to eliminate such fare-fixing by this public agency, which hopefully might avoid or minimize direct tax subsidy. District operates a toll bridge, a bus system and a passenger ferry line, all serving comparable termini. The intrinsic intricacy of balancing the charges for its three distinct services, even without the added problems of detailed comparison of environmen-

tal effects, might lead the Legislature to some tempering of CEQA as it affects this and like districts. However, in light of the many appellate decisions embracing a broad application of CEQA, and the Legislature's own declaration of the act's broad purposes, we cannot read such a limitation into the present language.

Respondents rely upon two decisions of the Public Utilities Commission (Decision No. 81237, 75 Cal.P.U.C. 133; No. 81484, 75 Cal.P.U.C. 243). In each, the Supreme Court denied application for writ of review (Sup. Ct. docket Nos. 23024 and 23031). Respondents point to the rule that such denial "is a decision on the merits both as to the law and the facts presented in the review proceedings" even though the order of the Supreme Court is without opinion. (*People* v. *Western Air Lines,* 42 Cal.2d 621, 630-631 [268 P.2d 723].) But the cited PUC decisions carefully avoid holding that all rate making determinations of that body are entirely exempt from CEQA. Rather, they hold only that an EIR is not required in every rate case, but that the "policy provisions" of CEQA do apply. "The Commission will consider potential environmental impact in rate matters. When such issues are brought to light . . . , appropriate findings will be made thereon" (75 Cal.P.U.C. at p. 142). Here we hold only that possible impact of the fare increase upon the environment must be considered. If either of the first two steps of *No Oil* is appropriate after such consideration, no EIR will be required, but a definite finding upon the environmental impact of the fare project must be made. Our decision is limited to declaring that appellants' petition states a cause of action and merely triggers the three-tiered structure of CEQA described in *No Oil.* "If a project falls within a category exempt by administrative regulation (see Pub. Resources Code, §§ 21084, 21085), or 'it can be seen with certainty that the activity in question will not have a significant effect on the environment' (Cal. Admin. Code, tit. 14, § 15060), no further agency evaluation is required. If there is a possibility that the project may have a significant effect, the agency undertakes an initial threshold study (Cal. Admin. Code, title 14, § 15080): if that study demonstrates that the project 'will not have a significant effect,' the agency may so declare in a brief Negative Declaration. (Cal. Admin. Code, tit. 14, § 15083.) If the project is one 'which may have a significant effect on the environment,' an EIR is required. (Pub. Resources Code, §§ 21100, 21151; see Cal. Admin. Code, tit. 14, § 15080.)" (13 Cal.3d at p. 74.)

We note that a negative declaration will be reversed only if the agency decision is not supported by substantial evidence (*Running Fence Corp. v. Superior Court,* 51 Cal.App.3d 400, 418 [124 Cal.Rptr. 339], and cases there cited). When an EIR is required and prepared, the project may be approved if there are overriding economic concerns (see *San Francisco Ecology Center* v. *City and County of San Francisco,* 48 Cal.App.3d 584, 588-591 [122 Cal.Rptr. 100]).

The judgment of dismissal is reversed.

Brown (H. C.), J., and Emerson, J.,* concurred.

A petition for a rehearing was denied September 1, 1976, and respondents' petition for a hearing by the Supreme Court was denied September 29, 1976. Tobriner, J., did not participate therein.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.