[Civ. No. 40086. First Dist., Div. Four. June 17, 1980.]

FRIENDS OF "B" STREET et al., Plaintiffs and Appellants, v. CITY OF HAYWARD et al., Defendants and Appellants.

COUNSEL

Jane W. Greenfield, Greenfield, Glasrud, Fisher & Skinner and James T. Skinner, Jr., for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Robert H. Connett and E. Clement Shute, Jr., Assistant Attorneys General, Alexander T. Henson and Daniel P. Selmi, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

John W. Scanlon, City Attorney, Myron A. Johnson, Assistant City Attorney, and Thomas R. Curry, Deputy City Attorney, Berliner, Cohen & Biagini and Jeffrey P. Widman for Defendants and Appellants.

Adrian Kuyper, County Counsel (Orange), and John R. Griset, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

## OPINION

**CHRISTIAN, J.**—Friends of "B" Street, an unincorporated citizens' group (Friends), sought a writ of mandamus and an injunction to compel the City of Hayward to (1) prepare an environmental impact report pursuant to the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) before proceeding with a proposed street improvement project (the "B" Street Project); (2) refrain from proceeding with the project until the general plan of the city met the requirements of the state Planning and Zoning Law (specifically Gov. Code, §§ 65302, 65855 and 65860); and (3) refrain from proceeding with the project on the grounds of an alleged violation of Government Code sections 3600-3760.

The mandamus cause of action was tried first and submitted on documentary evidence. The court rendered judgment granting the writ on the ground that it was an abuse of discretion for the city council to adopt a "negative declaration" certifying that the project would not have a significant environmental effect, since there was substantial evidence to the contrary. On the second cause of action the court rendered judgment for the city on the ground that injunctive relief was not an available remedy. The court rejected the Friends' request for attorney fees, stating that "the Court lacks power to make such an award." The court dismissed the third cause of action without prejudice.

The Friends appealed from the judgment insofar as it denied them attorney fees and denied the injunctive relief sought in the second cause of action. The city cross-appealed from the judgment insofar as it determined that it was improper for the city to adopt a "negative declaration" with respect to the proposed project. This court affirmed the judgment in a published opinion filed November 17, 1977. The California Supreme Court granted a hearing and retransferred the cause to this court on September 20, 1979, for reconsideration in light of *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200], *Northington v. Davis* (1979) 23 Cal.3d 955 [154 Cal.Rptr. 524, 593 P.2d 221], *Save El Toro Assn. v. Days* (1977) 74 Cal.App.3d 64, 70-74 [141 Cal.Rptr. 282], and *Woodland Hills Residents Assn., Inc. v. City Council* (1975) 44 Cal.App.3d 825, 838 [118 Cal.Rptr. 856].

I

The private attorney general theory, as codified in Code of Civil Procedure section 1021.5,[1] authorizes an award of attorney fees in the present case if (1) the Friends' action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons," and (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate...." (Code Civ. Proc., § 1021.5; *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, 934-935 [*Woodland Hills II*].) ■ Although section 1021.5 had not yet become effective at the time the trial court denied the Friends' request for attorney fees, it applies to this proceeding because the ruling was pending on appeal at the time the legislative enactment became effective. (*Woodland Hills II, supra,* 23 Cal.3d at pp. 928-932.)

The city contends that no important right was vindicated by the Friends' action in the present case, which resulted in the trial court's proscription against further action on the "B" Street Project until an environmental impact report (EIR) was prepared, because the failure to have an EIR prepared was merely a "procedural error" and was not of statewide importance or effect. ■ The trial court, however, correctly determined that the Friends' suit "effectuated the strong State policy expressed in the California Environmental Quality Act of 1970" and had the result of enforcing important environmental laws. "[T]he Legislature in CEQA has enacted a logical and carefully devised program of wide application and broad public purpose. In many respects the EIR is the heart of CEQA. The report...may be viewed as an environmental 'alarm bell' whose purpose it is to alert the public and its responsible officials to environmental changes before they have reached ecological points of no return." (*County of Inyo* v. *Yorty* (1973) 32 Cal.App.3d 795, 810 [108 Cal.Rptr. 377].) An important statutory policy was effectuated in the present case, and the private attorney general theory

---

[1]Code of Civil Procedure section 1021.5: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

(as codified in Code Civ. Proc., § 1021.5) may encompass effectuation of statutory as well as constitutional rights. (*Woodland Hills II, supra,* 23 Cal.3d at p. 935.)

The trial court's findings predated the enactment of section 1021.5, but they are so unambiguous and so close in language to the statutory requirement of "enforcement of an important right affecting the public interest" that remand for a further finding on this point is unnecessary. (Cf. *Woodland Hills II, supra,* 23 Cal.3d at p. 938 [remand necessary because trial court did not undertake the necessary inquiry].) The court withheld an award of attorney fees only because it concluded that it lacked the authority to make such an award.

The trial court concluded that as a result of the Friends' suit, "there has been a conferral of substantial benefits upon a large class of a pecuniary and/or nonpecuniary nature." This finding is dispositive as to the second statutory requirement, that "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons...." (Code Civ. Proc., § 1021.5.)

The trial court did not, however, render a determination on the third statutory requirement, that "the necessity and financial burden of private enforcement are such as to make the award appropriate." The court determined that the Friends had "successfully carried the difficult and heavy burdens of enforcing important environmental laws," but did not determine to what extent, if any, this burden justified an attorney fee award. An award of attorney fees pursuant to section 1021.5 requires a determination by the trial court, upon remand of the cause, as to whether the necessity and financial burden of private enforcement placed a burden on the Friends disproportionate to their individual interests in the matter and made an attorney fee award appropriate. (*Woodland Hills II, supra,* 23 Cal.3d at pp. 941-942.)

## II

Independent of the private attorney general theory, the Friends are entitled to an attorney fee award under the substantial benefit rule, a nonstatutory equitable basis for attorney fee awards. (See *Woodland Hills II, supra,* 23 Cal.3d at pp. 942-943.) This rule "permits the award of fees when the litigant, proceeding in a representative capacity, obtains a decision resulting in the conferral of a 'substantial benefit' of a

pecuniary or nonpecuniary nature. In such circumstances the court, in the exercise of its equitable discretion, thereupon may decree that under dictates of justice those receiving the benefit should contribute to the costs of its production." (*Serrano v. Priest* (1977) 20 Cal.3d 25, 38 [141 Cal.Rptr. 315, 569 P.2d 1303].) Unlike the private attorney general theory, which is intended to promote the vindication of important rights affecting the public interest, the substantial benefit rule is intended to prevent unjust enrichment. (*Woodland Hills II, supra,* 23 Cal.3d at pp. 943-945.)

An award of fees under the substantial benefit rule does not require substantial benefit to the defendant, but permits the award where it will operate to spread costs proportionately among the benefited members of an ascertainable class, e.g., where the defendant represents or acts on behalf of the benefited class. (*Id.,* at pp. 943-944; see also *Serrano v. Priest, supra,* 20 Cal.3d at p. 40, fn. 10.) *"So long as the costs bear a reasonable relation to the benefits,* the 'involuntary client' who retains a substantial gain from the litigation will generally have no just cause to complain." (*Woodland Hills II, supra,* 23 Cal.3d at p. 945; italics added.)

The court in *Woodland Hills II* stated that, while the substantial benefit rule has its clearest application where litigation results in the conferral of a substantial benefit of a pecuniary nature, "there have been instances in which litigation has produced nonpecuniary benefits of such a concrete and clearly substantial value that equitable considerations have suggested the injustice in permitting others to obtain such benefits without contributing to their cost." (*Woodland Hills II, supra,* 23 Cal.3d at pp. 945-946.) The stare decisis result of litigation, however, is not alone sufficient to justify an attorney fee award under the rule. (*Id.,* at pp. 946-947.) Nor was an award justified in *Woodland Hills II* on the basis that the litigation resulted in the effectuation of the statutory policy requiring approved subdivision maps to be consistent with a general plan. "[T]he private attorney general doctrine rather than the substantial benefit theory is the appropriate basis for evaluating attorney fee requests arising from the effectuation of such statutory policies." (*Id.,* at p. 947.) This is because the unjust enrichment justification for the substantial benefit rule is ill suited for application to benefits "less tangible and more ephemeral in nature." (*Id.,* at p. 945.)

By contrast, in *Northington v. Davis, supra,* 23 Cal.3d 955, 961-962, the court held that the trial court there could consider the propriety of

an attorney fee award under the substantial benefit rule because the litigation, which resulted in the enjoining of construction of a helicopter landing strip by the City of Los Angeles without the required approval of the State Department of Transportation, prevented the illegal expenditure of $9,600 of public funds. The only results of the litigation in *Woodland Hills II* were prevention of *private* expenditure on a proposed subdivision that might be inconsistent with a comprehensive general plan and effectuation of the statutory policy in favor of consistency, while the result in *Northington* was to prevent the illegal expenditure of *public* funds. The trial court in *Northington* could thus have determined that the litigation bestowed a substantial benefit upon the people of Los Angeles sufficient to justify at least a partial attorney fee award, although that benefit could not justify the $11,000 attorney fee award granted by the court. (*Id.*, at p. 962.)

The Friends' litigation did not merely result in the preparation of an EIR, but also prevented the illegal expenditure of public funds on the "B" Street Project (i.e., expenditure without preparation of the required EIR). The trial court commanded the city to take no further action on development and construction of the "B" Street Project until an EIR had been prepared. That work on the project might resume after the statutory requirements were satisfied was apparently not a bar to an award of attorney fees under the substantial benefit rule in *Northington* and does not prevent the award under that theory here. The *illegal* expenditure of public funds was prevented in both cases. The *Northington* decision thus authorizes an award of attorney fees under the substantial benefit rule, but only to the extent that the fees bear a reasonable relation to the benefits of the litigation.

The city made no attempt to show that the results of the Friends' lawsuit could have been obtained by available means other than litigation. (See *Save El Toro Assn.* v. *Days* (1979) 98 Cal.App.3d 544, 555 [159 Cal.Rptr. 577].) The trial court correctly determined that because of the Friends' suit, "there has been a conferral of substantial benefits upon a large class of a pecuniary and/or nonpecuniary nature." (3) The court may thus award attorney fees to the Friends pursuant to the substantial benefit rule, in an amount reasonably related to the benefits conferred by the litigation. Because the "benefits conferred" within the context of the substantial benefit rule might not justify an award of a fee fully commensurate with the time spent by the attorney, the court may find it necessary to determine whether the Friends are also entitled

to an award of attorney fees pursuant to Code of Civil Procedure section 1021.5, on the basis of significant benefit through the enforcement of an important right affecting the public interest.

## III

The Friends challenge the trial court's determination that injunctive relief was not an available remedy on their second cause of action, in which they sought cessation of the "B" Street Project on the grounds that (1) it was inconsistent with the city's general plan, and (2) the general plan did not contain a noise element as required by Government Code section 65302, subdivision (g).

Government Code section 65300 requires a city to adopt a comprehensive, long-term general plan for the use and physical development of land within the city. The general plan is to serve "as a pattern and guide for the orderly physical growth and development and the preservation and conservation of open space land of the county or city and as a basis for the efficient expenditure of [the city's or county's] funds relating to the subjects of the general plan. . . ." (See Gov. Code, § 65400.) The general plan "is, in short, a constitution for all further development within the city." (*O'Loane* v. *O'Rourke* (1965) 231 Cal. App.2d 774, 782 [42 Cal.Rptr. 283]; 58 Ops.Cal.Atty.Gen. 21 (1975); see also *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal. App.3d 521, 532 [160 Cal.Rptr. 907].)

The plan "shall consist of a statement of development policies and shall include a diagram or diagrams and text setting forth objectives, principles, standards, and plan proposals." (Gov. Code, § 65302.) It must include elements for land use, circulation, housing, conservation, open space, seismic safety, noise, scenic highways, and safety. The requirements of section 65302 are applicable to charter cities, such as the City of Hayward. (Gov. Code, § 65302.)[2] The Friends argued at trial that the "B" Street Project was not consistent with the general plan's circulation element and strip development provisions, and that the plan lacked a noise element entirely.

---

[2]See also Government Code section 65700, providing that the provisions of chapter 3 of the State Planning and Zoning Law "shall not apply to a charter city, except to the extent that the same may be adopted by charter or ordinance of the city; except that charter cities shall adopt general plans in any case, and such plans shall be adopted by resolution of the legislative body of the city, or the planning commission if the charter so provides, and such plans shall contain the mandatory elements required by Article 5 (commencing with Section 65300) of Chapter 3. . . ."

City approval of a proposed subdivision, construction of public improvements, and private sale of subdivided lots may be enjoined for lack of consistency of the subdivision map with the general plan. (*Save El Toro Assn.* v. *Days, supra,* 74 Cal.App.3d 64, 70-74; *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 44 Cal.App.3d 825, 838 [*Woodland Hills I*].) Such consistency is expressly required by Government Code section 66473.5 (former Bus. & Prof. Code, § 11526). The Friends correctly argue that a city's public works projects, as well as private development as set forth in *Woodland Hills I* and *Save El Toro Assn.,* must be consistent with its general plan.

Government Code section 65302 requires charter as well as general law cities to adopt a general plan containing specified mandatory elements. In setting forth these requirements the Legislature must have intended that the city would comply with whatever general plan elements it had adopted. (See *O'Loane* v. *O'Rourke, supra,* 231 Cal.App. 2d at pp. 782-783.) This conclusion is supported by the Legislature's own declaration of state policy and legislative intent that "decisions involving the future growth of the state, most of which are made and will continue to be made at the local level, should be guided by an effective planning process, including the local general plan. . . ." (Gov. Code, § 65030.1.)[3] The Legislature did not limit this policy to decisions regarding proposed private developments; it encompasses *all* decisions involving the future growth of the state, which necessarily includes decisions by a city to proceed with public works projects. All such decisions are to be guided by an effective planning process that includes the local general plan.

The City of Hayward was required to adopt all mandatory elements specified in Government Code section 65302, including a noise element, and was required to conform its proposed public works projects to its general plan. The implied statutory requirement of consistency has no less effect than the express statutory subdivision map consistency requirement invoked in *Save El Toro Assn.* and *Woodland Hills I.*

That Government Code section 65302 does not provide for injunctive relief where a proposed public works project is not consistent with a general plan does not deprive the trial court of authority to em-

---

[3]Government Code section 65030.1, enacted in 1976, was derived from similar statutory provisions enacted in 1970 (former Gov. Code, § 65030, added by Stats. 1970, ch. 1534, § 2, p. 3096).

ploy this remedy. Where a right is created by statute without any prescribed remedy, it may be enforced by any appropriate remedy, legal or equitable. (*Palo Alto-Menlo Park Yellow Cab Co.* v. *Santa Clara County Transit Dist.* (1976) 65 Cal.App.3d 121, 131 [135 Cal.Rptr. 192]; accord, *Paxton* v. *Paxton* (1907) 150 Cal. 667, 670 [89 P. 1083]; see also *Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 727 [79 Cal.Rptr. 319, 456 P.2d 975].) Thus, for example, in *Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.* (1972) 27 Cal.App.3d 695, 704-705 [104 Cal.Rptr. 197], the court concluded that where trial courts determine an EIR to be insufficient as an informative document, "the courts properly may use their ancient and purposeful instrument of injunction to deal with a need for effective equitable action in a new but universally recognized situation...." Similarly, the decision in *Save El Toro Assn.* authorized the enjoining of a public works project on the basis of its relationship to a proposed private subdivision that was inconsistent with the local general plan, although no statute authorized injunctive relief. (74 Cal.App.3d at pp. 70-74.) The Friends may thus obtain injunctive relief on the basis of inconsistency of the proposed "B" Street Project with the city's general plan.

The trial court also may grant injunctive relief for want of a noise element in the city's general plan, with which the "B" Street Project is to be consistent. Government Code section 65302 prescribes no remedy for failure of a general plan to contain a mandatory element; therefore, any appropriate legal or equitable remedy may be employed. The Friends, however, could bring a direct action to compel the city to adopt the mandated noise element. (See 58 Ops.Cal.Atty.Gen. 21, 27 (1975).) Whether the injunctive relief sought is the appropriate remedy to be employed here, in light of the availability of relief by alternative means, is to be determined by the trial court, within the exercise of its sound discretion.

## IV

The city, as cross-appellant, challenges the trial court's determination that the city council abused its discretion in dispensing with an EIR on the basis of a negative declaration. CEQA requires all local agencies to prepare an EIR on any project "which may have a significant effect on the environment." (Pub. Resources Code, § 21151; *Shawn* v. *Golden Gate Bridge etc. Dist.* (1976) 60 Cal.App.3d 699, 701 [131 Cal.Rptr. 867].) The act provides a three-tiered structure to guide agencies: If a

proposed project falls within a category exempt from the requirements of CEQA by administrative regulation, or if it is certain that the project will not have a significant effect upon the environment, no further agency evaluation is required. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 74 [118 Cal.Rptr. 34, 529 P.2d 66]; *Shawn* v. *Golden Gate Bridge etc. Dist., supra,* 60 Cal.App.3d 699, 703; see *COAC, Inc.* v. *Kennedy Engineers* (1977) 67 Cal.App.3d 916, 921 [136 Cal.Rptr. 890].) If there is a possibility that the project may have a significant environmental effect, the agency must conduct an initial threshold study. (Cal. Admin. Code, tit. 14, § 15080.) If the initial study reveals that the project will not have such effect, the lead agency may complete a negative declaration briefly describing the reasons supporting this determination.[4] (*People* v. *County of Kern* (1976) 62 Cal.App.3d 761, 777-778 [133 Cal.Rptr. 389]; *Shawn* v. *Golden Gate Bridge etc. Dist., supra,* 60 Cal.App.3d 699, 703; see Pub. Resources Code, § 21064; Cal. Admin. Code, tit. 14, §§ 15033, 15035, 15083.) However, if the project may have a significant effect on the environment, an EIR must be prepared. (*No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d 68, 74; *COAC, Inc.* v. *Kennedy Engineers, supra,* 67 Cal.App.3d 916, 921; see Pub. Resources Code, § 21151; Cal. Admin. Code, tit. 14, §§ 15080, 15084.)

State EIR regulation defines "significant effect" as "a substantial, or potentially substantial, adverse change in any of the physical conditions within the area affected by the activity including land, air, water, minerals, flora, fauna, ambient noise, and objects of historical or aesthetic significance." (Cal. Admin. Code, tit. 14, § 15040.) "There may be a difference of opinion on whether a particular effect should be considered adverse or beneficial, but where there is, or anticipated to be, a substantial body of opinion that considers or will consider the effect to be adverse, the lead agency should prepare an EIR to explore the environmental effects involved." (Cal. Admin. Code, tit. 14, § 15081.) In specified instances proposed projects *must* be found to have a significant effect on the environment. (Cal. Admin. Code, tit. 14, § 15082.)

---

[4] Section 15083, subdivision (c) of the state EIR guidelines provides as follows: "(c) Contents. A Negative Declaration shall include: (1) A brief description of the project; including a commonly used name for the project if any; (2) The location of the project and the name of the project proponent; (3) A finding that the project will not have a significant effect on the environment; (4) An attached copy of the Initial Study documenting reasons to support the finding. (5) Mitigation measures, if any, included in the project to avoid potentially significant effects." (Cal. Admin. Code, tit. 14, § 15083, subd. (c); see *People* v. *County of Kern* (1976) 62 Cal.App.3d 761, 778 at fn. 5 [133 Cal.Rptr. 389].)

The Supreme Court declared in *No Oil, Inc.* v. *City of Los Angeles, supra*, that, "since the preparation of an EIR is the key to environmental protection under CEQA, accomplishment of the high objectives of that act requires the preparation of an EIR whenever it can be fairly argued on the basis of substantial evidence that the project may have significant environmental impact." (13 Cal.3d at p. 75; see also Cal. Admin. Code, tit. 14, § 15084, subd. (b) ["An EIR should be prepared whenever it can be fairly argued on the basis of substantial evidence that the project may have a significant effect on the environment."].) The court also stated that "the existence of serious public controversy concerning the environmental effect of a project in itself indicates that preparation of an EIR is desirable." (13 Cal.3d at pp. 85-86.)

The trial court in the present case determined that the city council abused its discretion when it adopted a negative declaration, because it was presented with "[s]ubstantial evidence that the project might have a significant effect environmentally." The city contends that the court should have confined its review to a determination whether the decision to adopt a negative declaration was supported by substantial evidence, and that the decision should have been upheld because regardless of any evidence that the project might have a significant environmental effect there was substantial evidence to the contrary.

The city relies upon *Pacific Water Conditioning Assn., Inc.* v. *City Council* (1977) 73 Cal.App.3d 546, 558 [140 Cal.Rptr. 812], in which the trial court had found substantial evidence to support a determination that a proposed ordinance would have no significant environmental effect. The appellant asserted that there was substantial evidence to the contrary and contended that the city was required to prepare an EIR whenever it perceived some substantial evidence that a project may have a significant environmental effect. The court stated that the appellant was "correct that that is the standard to be observed by the agency in making its determination. [Citations.] But that is not the applicable standard for judicial review. The test to be applied by a reviewing court is whether there is any substantial evidence in light of the entire record to support the decision of the agency." (*Id.*; accord, *Shawn* v. *Golden Gate Bridge etc. Dist., supra*, 60 Cal.App.3d 699, 704; *Snyder* v. *City of South Pasadena* (1975) 53 Cal.App.3d 1051, 1060 [126 Cal.Rptr. 320]; *Running Fence Corp.* v. *Superior Court* (1975) 51 Cal.App.3d 400, 423 [124 Cal.Rptr. 339]; *Plan for Arcadia, Inc.* v. *City Council of Arcadia* (1974) 42 Cal.App.3d 712, 725 [117 Cal.Rptr. 96]; *Hixon* v.

*County of Los Angeles* (1974) 38 Cal.App.3d 370, 379-382 [113 Cal. Rptr. 433]; see Pub. Resources Code, § 21168.)

*Pacific Water Conditioning* states the correct standard of judicial review. ■ But if a local agency is required to secure preparation of an EIR "whenever it can be *fairly argued* on the basis of substantial evidence that the project may have significant environmental impact" (*No Oil, Inc.* v. *City of Los Angeles, supra*, 13 Cal.3d at p. 75; italics added), then an agency's adoption of a negative declaration is not to be upheld merely because substantial evidence was presented that the project would not have such impact. The trial court's function is to determine whether substantial evidence supported the agency's conclusion as to whether the prescribed "fair argument" could be made. If there was substantial evidence that the proposed project might have a significant environmental impact, evidence to the contrary is not sufficient to support a decision to dispense with preparation of an EIR and adopt a negative declaration, because it could be "fairly argued" that the project might have a significant environmental impact. Stated another way, if the trial court perceives substantial evidence that the project might have such an impact, but the agency failed to secure preparation of the required EIR, the agency's action is to be set aside because the agency abused its discretion by failing to proceed "in a manner required by law." (Pub. Resources Code, § 21168.5.)

*Pacific Water Conditioning* did not properly apply this standard of judicial review. It was not enough for the court to determine that the agency was presented with substantial evidence that the proposed ordinance would not have a significant environmental impact. The court should have assessed the evidence to the contrary to determine whether it could be *fairly argued* that the ordinance might have such impact. Only in this manner can a reviewing court determine whether an agency's decision to authorize a negative declaration was supported by substantial evidence in light of the whole record.

One court properly refused to conclude that the adoption of a negative declaration is an abuse of discretion whenever *any* controversy as to possible environmental impact is presented: "We reject the inference that the existence of factual controversy, uncertainty, conflicting assertions, argument, or public controversy can of themselves nullify the adoption of a negative declaration and require the preparation of an EIR when there is no substantial evidence in the record that the project as designed and approved will fall within the requirements of [CEQA]."

(*Running Fence Corp.* v. *Superior Court, supra*, 51 Cal.App.3d 400, 424.) The standard to be employed by the agency is not whether *any* argument can be made that a project might have a significant environmental impact, but rather whether such an argument can *fairly* be made. (See *No Oil, Inc.* v. *City of Los Angeles, supra*, 13 Cal.3d at pp. 85-86 ["the existence of *serious* public controversy...indicates that preparation of an EIR is desirable" (italics added)].) If, as stated in *Running Fence*, there is no substantial evidence that a project will fall within the requirements of CEQA, an argument that a project might have such impact cannot fairly be made.

■ In the present case the adoption of a negative declaration was an abuse of discretion. The city's initial study revealed that the short term effects of the "B" Street Project include increased dust and auto exhaust, disruption of business during the construction of the project, and increased bank erosion and possible loss of wildlife habitat along San Lorenzo Creek during construction of a bridge. Among the long term effects of the project are increased traffic, increased noise, paving and removal of grass and garden areas, the removal of vegetation, landscaping, shrubs and hedgerows, the removal of 153 mature trees (some more than 80 years old) which presently line the street, and the elimination of on-street parking on "B" Street and Center Street, aggravating present parking problems that already exist in the area. Two neighborhood stores would be removed, and 12 families would be displaced due to the removal of residential structures. The project would result in the loss of the residential community characteristic of the area, and a decrease in residential property values. The residential desirability of adjacent properties would be adversely affected by the increased noise and exposure to traffic, reduced setbacks of the structures from the street, and the loss of on-street parking. The conversion of single-family dwellings to commercial or multi-family use would be accelerated. The project would also result in a decreased visual or aesthetic quality of the area due to the removal of the trees, grass and garden areas, and the decrease in the setback of the structures from the street. This evidence indicated that a finding of significant environmental effect was mandatory. (Cal. Admin. Code, tit. 14, § 15082.) The trial court correctly determined that there was substantial evidence that the "B" Street Project might have a significant environmental effect.

The judgment is reversed insofar as it denies the Friends' request for attorney fees and denies injunctive relief on the second cause of action, and is affirmed in all other respects. The cause is remanded for pro-

ceedings consistent with this opinion. The Friends shall recover their costs on the appeal and on the cross-appeal.

Rattigan, Acting P. J., and Poché, J., concurred.

The petition of defendants and appellants for a hearing by the Supreme Court was denied September 3, 1980.