[Civ. No. 47586. First Dist., Div. Two. July 20, 1982.]

SAN JOSE COUNTRY CLUB APARTMENTS,
Plaintiff and Respondents, v.
COUNTY OF SANTA CLARA, Defendant and Appellant.

950

COUNSEL

Selby Brown, Jr., County Counsel, and Ann Miller Ravel, Deputy County Counsel, for Defendant and Appellant.

Robert M. Myers, Acting City Attorney (Santa Monica), Stephen Shane Stark, Assistant City Attorney, Susan L. Carroll, Deputy City Attorney, and Eric W. Wright as Amici Curiae on behalf of Defendant and Appellant.

Schwartz, Alschuler & Grossman, Alschuler, Grossman & Pines, Bruce Warner and Paul H. Samuels for Plaintiff and Respondent.

OPINION

**GRODIN, P. J.**—The County of Santa Clara (hereafter county) appeals from an order granting a preliminary injunction to enjoin enforcement of Santa Clara County Ordinance No. NS-628 (as amended by ordinance No. NS-629) against plaintiff, San Jose Country Club Apartments. The amended ordinance (hereafter ordinance) is designed to prohibit, in the unincorporated areas of Santa Clara County, discrimination in rental housing "on the basis of age, parenthood, pregnancy, or presence of a minor child," and provides for both civil remedies and criminal penalties[1] against violators. Plaintiff, a limited partnership doing business as Oakwood Garden Apartments-San Jose South, owns a 789-unit apartment complex in an area covered by the ordinance. According to plaintiff, the complex has been operated since its opening as an adult residential community and has been rented exclusively to persons over age 21 having no minor children residing with them.

In granting the preliminary injunction, the trial court declared the ordinance void as (1) preempted by the combined effect of two state statutes, the Rumford

---

[1]As originally challenged, NS-628 provided for a fine of up to $500 for violations designated "infractions." That provision conflicted with Government Code section 25132 which requires that criminal penalties for infractions of county ordinances not exceed $50 for a first violation, $100 for a second violation and $250 for each additional violation occurring within the same year. The amending ordinance, NS-629, was passed as an emergency measure, before the court's ruling on the injunction, to bring the penalty provision into compliance with section 25132 and remove that potential ground for invalidation.

Fair Housing Act (Health & Saf. Code, § 35700 et seq.) now substantively reenacted as part of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), and the Unruh Civil Rights Act (Civ. Code, §§ 51-53), and (2) passed in violation of environmental impact measures required by the California Environmental Quality Act of 1970 (hereafter CEQA or act) (Pub. Resources Code, § 21000 et seq.). The court also suggested that the ordinance might offend the constitutional right of privacy and right to liberty. Challenging those conclusions and arguing that plaintiff failed to show irreparable injury as required by section 526 of the Code of Civil Procedure, the county contends on this appeal that the court erred in granting the preliminary injunction.

The trial court's decision was rendered prior to the Supreme Court's decision in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115], holding that the Unruh Civil Rights Act prohibits all forms of stereotypical discrimination, including refusal by an owner of an apartment complex to rent to families with children. (*Id.,* at pp. 724-726.) In light of *Marina Point,* we conclude that the trial court erred in enjoining enforcement of the ordinance.

I.

The trial court considered the subject matter of the ordinance preempted by state law, on the theory that the discrimination it prohibited was not encompassed within either the Unruh Civil Rights Act or the Fair Employment and Housing Act; and that the state Legislature, through those statutes, had occupied the field, foreclosing local regulation of discrimination on other grounds.

■ Whatever the merits of the trial court's reasoning, its premise has now been shown to be erroneous. The discrimination prohibited by the ordinance *is* of the sort prohibited by the Unruh Civil Rights Act, as interpreted in *Marina Point*; and that act, in Civil Code section 52, subdivision (e) expressly provides: "Actions under this section shall be independent of any other remedies or procedures that may be available to an aggrieved party." Moreover, the statute which amended the Unruh Civil Rights Act in 1976 to add this provision makes clear the understanding of the Legislature: "It is the intent of the Legislature that the State of California by the provisions of this act not preempt this area of concern so that other jurisdictions in the state may take actions appropriate to their concerns." (Stats. 1976, ch. 366, § 3, p. 1013.) Such a definitive statement of legislative intent leaves no room for the plaintiff's preemption theory.

## II.

The trial court considered the ordinance to constitute a "discretionary project[] proposed to be carried out or approved by [a] public agenc[y]" within the meaning of Public Resources Code section 21080, subdivision (a), for which CEQA compliance was required. ▮ Compliance entails a three-tiered structure. If a project falls within a category exempt by administrative regulation or "it can be seen with certainty that the activity in question will not have a significant effect on the environment," then no further evaluation is required. If there is a "possibility that the project may have a significant effect," then the agency undertakes an "initial threshold study," and if that study demonstrates that the project "will not have a significant effect," the agency may so declare in a brief negative declaration. Finally, if the project is one "which may have a significant effect on the environment," then an environmental impact report (EIR) is required. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 74 [118 Cal.Rptr. 34, 529 P.2d 66].)

It would appear that, for all practical purposes in connection with this appeal, the CEQA issue is moot, since after the trial court issued its preliminary injunction, the county readopted the ordinance as No. NS-631, this time preceding the adoption by a negative declaration regarding its environmental effect.[2] But even on plaintiff's theory that the issue is not moot, reversal is called for.

▮ Assuming, without deciding, that an ordinance of this sort would constitute a "discretionary project" within the meaning of CEQA were it not for the Unruh Civil Rights Act (cf. *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 277, fn. 16 [118 Cal.Rptr. 249, 529 P.2d 1017]; *Shawn* v. *Golden Gate Bridge etc. Dist.* (1976) 60 Cal.App.3d 699, 702 [131 Cal.Rptr. 867]), it seems exceedingly unlikely that the Legislature intended to require a county to assess environmental impact before it adopts an ordinance prohibiting discriminatory conduct already prohibited by state law. The guidelines under the CEQA further define "project" to mean "the whole of an action . . . resulting in a physical change in the environment, directly or ultimately . . . ." (Cal. Admin. Code, tit. 14, § 15037.) Plaintiff has suggested no impact upon the environment that may result from the ordinance, independent of the impact of the Unruh Civil Rights Act itself.[3] And the fact that

---

[2] Following adoption of NS-631, plaintiff amended its complaint to seek relief against the readopted ordinance. On October 24, 1979, the trial court preliminarily enjoined the enforcement of NS-631, but noted that the new injunction was not based on any CEQA violation. No appeals were taken from that order.

[3] It might be argued that the ordinance, with its criminal penalty provisions, would have an incremental effect on the environment over and above the effect of the Unruh Act, which affords only a civil remedy. The argument assumes (1) that there are persons who would be inclined to discriminate in violation of the Unruh Act despite its civil remedies (which include treble

*Marina Point* had not been decided at the time the ordinance was adopted has no bearing upon our present assessment of the legal situation. The Unruh Civil Rights Act was in effect at that time, and the court's decision in *Marina Point* has now authoritatively declared the meaning of that statute.

### III.

Plaintiff argues that the ordinance violates various constitutional rights, including rights of association, expression, privacy, travel, speech, due process, and equal protection. We review and analyze these issues as fully as is required for purposes of decision.

We observe, initially, that certain of these constitutional arguments apply equally to the Unruh Civil Rights Act itself, as interpreted in *Marina Point,* and that the constitutionality of that statute as applied to housing has been upheld against due process attack. (*Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 471 [20 Cal.Rptr. 609, 370 P.2d 313].) *In re King* (1970) 3 Cal.3d 226, 234 [90 Cal.Rptr. 15, 474 P.2d 983], upon which plaintiff relies for the proposition that an individual has the right "to live wherever he wants," involved a provision requiring nonsupporting fathers living outside the state of California to move into California to avoid criminal penalties; this decison protects nothing more than "the right to select a home outside this state" (*id.,* at p. 235) and is not on point.

*Dunn* v. *Blumstein* (1972) 405 U.S. 330 [31 L.Ed.2d 274, 92 S.Ct. 995] and *Eisenstadt* v. *Baird* (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct. 1029] are of no value to plaintiff as they require strict scrutiny only when a fundamental right is at issue; no such right is here implicated. Plaintiff has offered no authority in support of its assertion that its constitutional right to privacy has been impaired. Its arguments in regard to other fundamental rights are not persuasive.

Though commercial speech may be entitled to constitutional protection *(Linmark Associates, Inc.* v. *Willingboro* (1977) 431 U.S. 85 [52 L.Ed.2d 155, 97 S.Ct. 1614];· *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817]; *Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497 [134 Cal.Rptr. 668, 556 P.2d 1119]), *Pittsburgh Press Co.* v. *Human Rel. Comm'n* (1973) 413 U.S. 376, 389 [37 L.Ed. 2d 669, 93 S.Ct.

damages, with a minimum of $250), but who would be deterred from doing so by the criminal sanction provided by the ordinance (which calls for a $50 fine), and (2) that the additional compliance thus secured might have an effect on the environment such as to require compliance with CEQA. We are not prepared to accept the first proposition as a matter of fact, or the second as a matter of law.

2553], upheld the prohibition of discriminatory job advertisements, there being no First Amendment interest when "the commercial activity itself is illegal."

The statute is not overbroad, as was the county charter provision invalidated by *Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331 [38 Cal.Rptr. 625, 392 P.2d 385]. That provision explicitly prohibited petitioner civil servant's nonpartisan political activity, which was constitutionally protected. This statute cannot reasonably be construed to prohibit commentary about the ordinance, as plaintiff suggests. The less intrusive alternative test from *Sherbert* v. *Verner* (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790] would only be applicable if the free speech right had been infringed.

Nor is the ordinance unconstitutionally vague. *Roth* v. *United States* (1957) 354 U.S. 476, 491 [1 L.Ed.2d 1498, 1511, 77 S.Ct. 1304], holds that "all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .'" This standard has easily been satisfied.

The contract clause of the United States Constitution has not been violated. Plaintiff's authority, *West Coast Hotel Co.* v. *Parrish* (1937) 300 U.S. 379, 391 [81 L.Ed. 703, 708, 57 S.Ct. 578, 108 A.L.R. 1330], *sustained* a regulation over a contract clause challenge as a "reasonable" regulation "adopted in the interests of the community." In accord is *City of El Paso* v. *Simmons* (1965) 379 U.S. 497 [13 L.Ed.2d 446, 85 S.Ct. 577].

Likewise, the equal protection argument is groundless. The fact that the ordinance exempts mobilehome parks does not establish a violation of the Fourteenth Amendment, as plaintiff contends: the distinction accommodates state law permitting trailer parks to establish and enforce rules limiting residence to adults only (Civ. Code, § 798.76, former § 789.10), and there is a rational basis in light of findings by the board of supervisors that trailer parks in the county are primarily occupied by elderly retired adults, and that the parks could not add play areas for children without undue financial burden on those residents who live on fixed incomes. As no fundamental right is affected by the distinction, this rational basis is sufficient to sustain the ordinance. (*Eisenstadt* v. *Baird, supra,* 405 U.S. at p. 447 [31 L.Ed. at p. 358].)

Reversed.

Miller, J., concurred.

ROUSE, J.—I respectfully dissent.

In my opinion, the appropriate procedure here is not to reverse the judgment but to dismiss the appeal as moot. Since the trial court's decisions, the California Supreme Court has decided *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115] which, it appears, would have a significant bearing upon both the preemption issue (see Civ. Code., § 52, subd. (e)), and the CEQA issue (see *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 277, fn. 16 [118 Cal.Rptr. 249, 529 P.2d 1017]). The impact of that decision was, of course, not considered in the trial court and it has not been adequately briefed here. Moreover, since no appeal was taken from the injunction against the superseding ordinance, nothing we decide in this case can have any direct impact upon the current legal situation in Santa Clara County. Accordingly, I would dismiss the appeal as moot.