[No. AO18828. First Dist., Div. Three. Aug. 16, 1983.]

VIRGINIA MERZ, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF MONTEREY COUNTY,
Defendant and Respondent;
CARMEL VALLEY RANCH, INC.,
Real Party in Interest and Respondent.

934

COUNSEL

Alexander T. Henson and Richard H. Rosenthal for Plaintiff and Appellant.

Ralph R. Kuchler, County Counsel, and Jose Rafael Ramos, Deputy County Counsel, for Defendant and Respondent.

Michael D. Cling and Noland, Hamerly, Etienne & Hoss for Real Party in Interest and Respondent.

OPINION

**SCOTT, Acting P. J.**—Virginia Merz appeals from a judgment denying her petition for writ of mandate, in which she sought to compel the Board of Supervisors of the County of Monterey (the Board) to set aside its approval of the reconstruction of the Carmel Valley Road/Robinson Canyon Road intersection. The principal issue in her appeal is whether the Board abused its discretion in adopting a "negative declaration" rather than requiring an environmental impact report prior to approving the project. She also contends the evidence is insufficient to support the Board's finding that the project was consistent with the county's general plan. Respondents are the Board and real party in interest Carmel Valley Ranch, Inc. (CVR).

I

In January 1975, CVR sought approval from the County of Monterey for a specific plan for the development of a residential and resort lodge complex in Carmel Valley. In conjunction with the application, an environmental impact report was prepared and certified as complete by the Board. The report addressed the growth-inducing impact of the project, as well as the impact on traffic of its full development, and pinpointed the Carmel Valley

Road/Robinson Canyon Road intersection as a major concern. The Board approved the Carmel Valley Ranch Specific Plan in 1977. Among conditions of its approval was a requirement that the developer enter into an agreement with the county to financially participate in both reconstruction of the intersection, and construction of Carmel Valley Road to four lanes between Via Petra and Robinson Canyon Road.

Pursuant to that agreement, CVR prepared design alternatives for the intersection. Before the Board decided upon the alternative at issue in this case, which includes a single lane tunnel underpass, it chose but then rejected another alternative. Senior Planner Lynne Mounday did the initial study required by the California Environmental Quality Act (CEQA) on the underpass alternative, and recommended that the Board adopt a negative declaration with mitigation measures. After a hearing, the Board found that the project would have no significant effect upon the environment, and adopted the negative declaration with mitigation measures.

Appellant then filed this petition for writ of mandate. After a hearing at which several witnesses testified, the petition was denied.

## II

Appellant challenges the trial court's determination that the Board did not abuse its discretion when it decided that an environmental impact report was unnecessary. She contends that the trial court improperly relied on an environmental impact report which was not considered by the Board; she also contends that there was substantial credible evidence from which it could be fairly argued that the intersection reconstruction would have substantial adverse environmental impact.

CEQA (Pub. Resources Code, § 21050 et seq.)[1] requires all local agencies to prepare an environmental impact report (EIR) on any project "which may have a significant effect on the environment." (§ 21151.) If there is a possibility that a project may have such an effect, the agency must conduct an initial threshold study. (Cal. Admin. Code, tit. 14, § 15080.) ■ An agency should prepare an EIR whenever it can be fairly argued on the basis of substantial evidence that the project may have significant environmental impact. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 75 [118 Cal.Rptr. 34, 529 P.2d 66].) If the initial study reveals that the project will not have a significant effect, however, the agency may complete a negative declaration briefly describing the reasons supporting this determination. (*Id.*, at p. 74; *Friends of "B" Street* v. *City of Hayward* (1980) 106

---

[1]Unless otherwise indicated, all statutory references are to the Public Resources Code.

Cal.App.3d 988, 1000 [165 Cal.Rptr. 514]; see Cal. Admin. Code, tit. 14, §§ 15080, 15083.)

█ Judicial review of an agency decision under CEQA is governed by sections 21168 and 21168.5 of that act. Section 21168 provides that review of an agency decision "made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency" should follow the administrative mandamus procedure of Code of Civil Procedure section 1094.5. Section 21168.5 provides that other agency decisions should be reviewed by a traditional mandamus action. (*No Oil, supra,* 13 Cal.3d at p. 74, fn. 3.) █ In an action for administrative mandamus, the trial court reviews the administrative record, receiving additional evidence only under certain specifically defined circumstances. (Code Civ. Proc. § 1094.5.) In a traditional mandamus action, on the other hand, the court is not limited to the administrative record, but may receive additional evidence. (*No Oil, supra,* 13 Cal.3d at p. 79, fn. 6.) At the hearing on appellant's petition, the Board urged that the trial court should only consider the administrative record, while appellant characterized the action as traditional mandamus, in which the court could receive additional evidence. The trial court heard testimony subject to its ruling on the issue. It apparently never formally ruled, but its statement of decision indicates that it considered both the administrative record and the evidence before it. We need not consider respondent Board's argument that the court should have confined itself to the administrative record. Any error in receiving that evidence was not injurious to respondent, and our consideration of the issue would serve no purpose. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 212, pp. 4203-4204.)

The parties also disagreed as to the standard which the trial court should utilize in reviewing the Board's determination to adopt a negative declaration, and there is disagreement among the Courts of Appeal as well. According to *Pacific Water Conditioning Assn., Inc.* v. *City Council* (1977) 73 Cal.App.3d 546 [140 Cal.Rptr. 812], the agency's decision must be upheld if substantial evidence supports its determination that the proposed project will not have a significant environmental effect.[2] (*Id.,* at pp. 557-558.) In *Friends of "B" Street* v. *City of Hayward, supra,* 106 Cal.App.3d 988, 1002, however, Division Four of this district held that if a local agency must prepare an EIR " 'whenever it can be *fairly argued* on the basis of substantial evidence that the project may have significant environmental im-

---

[2]If the trial court has received additional evidence, the question before it is whether substantial evidence on the whole record, including the evidence presented to it, supports the agency's determination that no EIR was required. (*No Oil, supra,* 13 Cal.3d at p. 79, fn. 6.)

pact' [citation]," an agency's adoption of a negative declaration is not to be upheld merely because substantial evidence was presented that the project would not have such impact. "The trial court's function is to determine whether substantial evidence supported the agency's conclusion as to whether the prescribed 'fair argument' could be made. If there was substantial evidence that the proposed project might have a significant environmental impact, evidence to the contrary is not sufficient to support a decision to dispense with preparation of an EIR and adopt a negative declaration, because it could be 'fairly argued' that the project might have a significant environmental impact. Stated another way, if the trial court perceives substantial evidence that the project might have such an impact, but the agency failed to secure preparation of the required EIR, the agency's action is to be set aside because the agency abused its discretion by failing to proceed 'in a manner required by law.' (Pub. Resources Code, § 21168.5.)" (*Id.*, at p. 1002.) The rationale of the *"B" Street* court is that an agency's decision whether to issue a negative declaration "turns on its resolution of what resembles more a legal question than a factual one; the agency does not resolve conflicts in the evidence and conclude that there will or will not be significant environmental effects, but rather determines only whether there is substantial evidence supportive of a 'fair argument' that such effects will occur. [Citation.]" (*Perley* v. *Board of Supervisors* (1982) 137 Cal.App.3d 424, 433-434, fn. 4 [187 Cal.Rptr. 53].)

As did the *Perley* court, we find it unnecessary to resolve the conflict between *Pacific Water Conditioning* and *Friends of "B" Street.* (See *Perley, supra,* 137 Cal.App.3d at pp. 433-434, fn. 4.) This court and the trial court occupy identical positions with respect to review of the Board's decision in this case. (See *Brentwood Assn. for No Drilling, Inc.* v. *City of Los Angeles* (1982) 134 Cal.App.3d 491, 502-504 [184 Cal.Rptr. 664]; *Markley* v. *City Council* (1982) 131 Cal.App.3d 656, 667 [182 Cal.Rptr. 659]; see also *McGue* v. *Sillas* (1978) 82 Cal.App.3d 799, 807 [147 Cal.Rptr. 354].) The trial court concluded that the Board's decision was supported by substantial evidence, and added that framing the issue according to the *Friends of "B" Street* standard would not alter its conclusion. As we will explain, *infra,* from our own review of the administrative record and the evidence before the trial court, we find substantial evidence to support the Board's determination to adopt a negative declaration; in addition, we agree with the trial court that there is no substantial evidence from which it could be "fairly argued" that the project might have a significant environmental impact not already considered in the CVR EIR.

▮ The essence of appellant's argument is that the intersection project would have growth-inducing impact separate from that of the CVR project

itself, so that a separate EIR was necessary. However, the record does not support that contention.

Reconstruction of the intersection in some form was a condition of the Board's approval of the specific plan for the CVR. An EIR was prepared for the specific plan. That EIR could not have analyzed the underpass design, as that particular design had not been prepared or decided upon when the EIR was completed. Nevertheless, the EIR did address the growth-inducing impact of the CVR development.

The consultants who prepared the design alternatives were instructed to accommodate the traffic which would be generated by the build-out of CVR. The primary purpose of the underpass design was to make a safe intersection for that volume of traffic. In his initial study, Planner Mounday reported to the Board that because the intersection was designed only to accommodate the anticipated CVR traffic, it would not induce growth of any new projects.[3] Any future projects proposed for the valley would require their own environmental assessments. The record contains no substantial evidence to the contrary.

Appellant contends there was substantial evidence from which it could be fairly argued that the intersection project would be growth-inducing to an extent not already analyzed in the existing EIR. She focuses on one sentence in public works official Orett's cross-examination as evidence that the intersection project had twice the capacity necessary to accommodate the CVR development.

Even according to the *Friends of "B" Street,* the test is not whether any argument can be made that a project might have a significant environmental impact, but whether such an argument can *fairly* be made. If there is no substantial evidence that a project will fall within the requirements of CEQA, an argument that a project might have such impact cannot fairly be made. (*Friends of "B" Street, supra,* 106 Cal.App.3d at p. 1003.) Read in context, the testimony was that while the theoretical maximum number of vehicles which would go through the tunnel might average six vehicles per minute, that would be an unreasonable rate at which to expect people to use the roadway; the practical maximum was half that number. One sentence taken out of context is not substantial evidence.

Relying on *City of Davis* v. *Coleman* (9th Cir. 1975) 521 F.2d 661, appellant contends the intersection reconstruction will have a "per se

---

[3]The initial study also concluded that the project's potential significant impacts (i.e., erosion, degradation of surface water, loss of native vegetation, visual degradation, etc.) could be reduced to insignificant levels provided certain measures in mitigation were taken. Appellant does not contest this aspect of the negative declaration.

significant environmental effect." The contention is without merit, and *City of Davis* is inapposite. ■ Unlike the proposed freeway interchange at issue in that case, the intersection reconstruction here was designed to accommodate a development whose growth-inducing impact had already been addressed in an EIR. In *City of Davis,* the purpose of the freeway interchange was to stimulate and service future industrial development in the area, but no assessment had been made of the potential environmental impact of that future development. (*Id.,* at pp. 673-677.)

Appellant's contention that the trial court relied on an EIR which had been rejected by the Board is a misrepresentation of what occurred. The CVR specific plan EIR was reviewed by Mounday in preparing his initial study, and the hearing before the Board on the recommended negative declaration makes it clear that the Board also considered the EIR.

### III

Appellant also contends there is no substantial evidence to support the court's finding that the intersection project was consistent with the county's general plan. In particular, she complains that the CVR specific plan required simultaneous reconstruction of the intersection and improvement of Carmel Valley Road to four lanes between Robinson Canyon Road and Via Petra. The contention is without merit. We find nothing in the plan itself or in the Board's subsequent conduct to indicate that when it approved the specific plan, it intended simultaneous construction of the two-road improvement projects. For example, the agreement entered into between the county and CVR to carry out the conditions imposed by the specific plan contained no simultaneous construction requirement.

Judgment is affirmed.

Feinberg, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied September 15, 1983.