[Civ. No. 40321. First Dist., Div. Four. June 20, 1977.]

LAKE COUNTY ENERGY COUNCIL, Plaintiff and Appellant, v. COUNTY OF LAKE et al., Defendants and Respondents; MAGMA ENERGY, INC. et al., Real Parties in Interest and Respondents.

852

**COUNSEL**

Peter F. Windrem for Plaintiff and Appellant.

Charles D. Haughton, County Counsel, and Herbert L. Keaton, Deputy County Counsel, for Defendants and Respondents.

Crump, Bruchler & Crump and Bruce B. Bruchler for Real Parties in Interest and Respondents.

**OPINION**

**EMERSON, J.***—Real party in interest Magma Energy, Inc. (hereafter Magma) applied to respondent Lake County Planning Commission (hereafter Planning Commission) for a use permit to drill three exploratory geothermal wells in an area on the slope of Mt. Konocti in Lake County. The Planning Commission ordered that a full environmental impact report (EIR) be prepared prior to approval of the permit. Magma filed an EIR, analyzing only the effects of the exploratory drilling. No consideration was given to the impact of a geothermal production unit in the event the exploratory wells were successful. The Planning Commission certified the EIR as being in compliance with the California Environmental Quality Act (hereafter CEQA), but denied Magma the use permit under section 78.2 of the Lake County Zoning Ordinance.

Magma appealed to respondent Lake County Board of Supervisors (hereafter Board of Supervisors) which overturned the Planning Commission decision and ordered that the Planning Commission issue a use permit for two of the exploratory wells. Appellant Lake County Energy Council filed in the superior court a petition for writ of mandate, seeking to set aside the certification of the EIR by the Planning Commission and

---

*Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.

to require respondents Board of Supervisors and the Planning Commission to vacate and annul the use permit. The court entered judgment denying the writ and the Energy Council appeals.

■ The point in controversy is clear: Appellant asserts that in connection with an application for exploratory geothermal drilling, an EIR which is prepared must assess the effects of commercial development in the event that geothermal resources are encountered; Magma and respondents contend that such an EIR need only extend to the exploratory drilling for which the application is sought.

We commence our analysis by reference to the guidelines issued by the Secretary of Resources for implementation of CEQA. (Cal. Admin. Code, tit. 14.) Section 15069 of these guidelines provides: "Where individual projects are, or a phased project is, to be undertaken and where the total undertaking comprises a project with significant environmental effect, the responsible agency or Lead Agency must prepare a single EIR for the ultimate project. Where an individual project is a necessary precedent for action on a larger project, *or commits the Responsible Agency to a larger project,* with significant environmental effect, an EIR must address itself to the scope of the larger project, subject to the limitation of Section 15066 of these Guidelines. Where one project is one of several similar projects of a public agency, but is not deemed a part of a larger undertaking or a larger project, the agency may prepare one EIR for all projects, or one for each project, but should in either case comment upon the combined effect." (Italics added.)

Since exploratory drilling is no doubt a "necessary precedent" to the larger project of commercial development, the guidelines seem to require that the EIR address itself to the scope of the "larger project." However, since the scope of the larger project is unknown until the initial project (exploratory wells) is completed, and the initial project, as will be shown below, does not "commit the Responsible Agency" to the larger project, it is arguable that an EIR need not encompass the contingency of commercial development.

■ The controversy is sharpened by California cases interpreting CEQA. While it is clear that the requirements of CEQA "cannot be avoided by chopping up proposed projects into bite-size pieces" which, when taken individually, may have no significant adverse effect on the environment (*Plan for Arcadia, Inc.* v. *City Council of Arcadia* (1974) 42 Cal.App.3d 712, 726 [117 Cal.Rptr. 96]), it is also true that where future

development is unspecified and uncertain, no purpose can be served by requiring an EIR to engage in sheer speculation as to future environmental consequences. (*Topanga Beach Renters Assn.* v. *Department of General Services* (1976) 58 Cal.App.3d 188, 196 [129 Cal.Rptr. 739].)

In *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 77, footnote 5 [118 Cal.Rptr. 34, 529 P.2d 66], the dilemma presented by these cases was recognized. The Supreme Court, although it did not (and needed not to) decide the issue, aptly and succinctly described the issues as follows: "Plaintiffs contend that the trial court erred in limiting the scope of the 'project' at issue to the drilling of two test wells; they maintain that the scope of inquiry should include the environmental effects of commercial production and exploitation of the oil resources of the Pacific Palisades. They point out that the drilling of the test wells would be a useless waste of money unless commercial production can follow. Thus information on the environmental impact of commercial production is relevant to the council's decision to approve the test wells; if that data proved that commercial production would be harmful, the council might well decide to disapprove the test drilling. Under these circumstances, plaintiffs observe that a narrow definition of 'project' which bars inquiry into the environmental effects of commercial production defeats the objectives of the act. [¶] Defendants protest, however, that the geologic information obtained from the test wells is essential to the preparation of an accurate EIR on the impact of commercial production. As the court pointed out in *Scientists' Inst. for Pub. Info., Inc.* v. *Atomic Energy Com'n* (1973) 481 F.2d 1079 [156 App.D.C. 395], an impact statement prepared before reliable information is available would 'tend toward uninformative generalities' (481 F.2d at p. 1093), but one delayed until after key decisions have been made could not assure that such decisions reflected environmental consideration. 'Thus we are pulled in two directions. Statements must be written late enough in the development process to contain meaningful information, but they must be written early enough so that whatever information is contained can practically serve as an input into the decision making process.' (481 F.2d at p. 1094.) [¶] The issue thus narrows to the question whether the city, before drilling of the test wells, has sufficient reliable data to permit preparation of a meaningful and accurate report on the impact of commercial production. Unfortunately the parties have not briefed this question thoroughly, and the record contains little evidence pertinent to its resolution. Since we are persuaded by plaintiffs' other contentions to reverse the judgment against them, we need not and do not decide whether the trial court erred in limiting the scope of inquiry to exclude consideration of commercial production." (*No Oil, Inc., supra,* at p. 77.)

In the instant case, a number of factors convince us that the scope of the inquiry in the subject EIR is not required by CEQA to include the effects of commercial geothermal production. In the first place, it must be recognized that without exploratory drillings, full-field geothermal development in the Mt. Konocti area remains a mere contingency. The drilling of these wells is necessary before Magma can at all assess whether or not the location should be considered suitable for development. At this point, no one knows whether the exploratory wells will uncover a reservoir of geothermal energy, whether the energy resource will consist of steam or hot water, whether that resource will prove of sufficient quality, quantity or temperature pressure so as to justify development, or how extensive such development will be. It therefore appears that at present Magma possesses no "reliable data to permit preparation of a meaningful and accurate report on the impact of commercial production" (*No Oil, Inc., supra,* at p. 77, fn. 5) other than the vaguest kind of generalities concerning geothermal production. Until the wells are drilled, no truly meaningful report could be prepared.

We note further that approval of the exploratory wells in no manner commits the Board of Supervisors to approval of general commercial development. In its findings pursuant to the granting of the use permit, the board states: "6. This use permit is for two (2) exploratory wells and the Board of Supervisors reaffirms that the granting of this use permit neither establishes precedent for geothermal field development in the immediate area nor includes commitment to single resource exploitation." This case is thus clearly distinguishable from *Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.* (1972) 27 Cal.App.3d 695 [104 Cal.Rptr. 197], where construction of the first phase of a project in effect committed the developer to a larger plan. (*Id.,* at pp. 706-707.) Here, to the contrary, the administrative agencies involved have determined, and the subject EIR itself states, that if geothermal sources are eventually discovered, a very comprehensive EIR would be required prior to commercial development. Until such a source is discovered, this activity cannot be viewed as a "phased project."

Finally, we take cognizance of the fact that before any facilities for geothermal production are constructed, the state energy commission must evaluate and certify such facilities. (Pub. Resources Code, § 25500; 58 Ops.Cal.Atty.Gen. 729.) Section 25500 provides that the issuance of such a certificate shall be required in lieu of any permit, certificate or similar document required by any state, local or regional entity.

The foregoing facts make clear that there is no danger that the county's present approval of exploratory drilling will serve as a hindrance to future intelligent decision-making with respect to the environmental consequences of commercial geothermal development in the Mt. Konocti area. (See *Hixon* v. *County of Los Angeles* (1974) 38 Cal.App.3d 370, 378-379 [113 Cal.Rptr. 433]; *Trout Unlimited* v. *Morton* (9th Cir. 1974) 509 F.2d 1276, 1283-1284.)

■ The Supreme Court has indicated in *No Oil, Inc.* that an EIR dealing with exploratory drilling must discuss the impact of the commercial development which may result therefrom only where "meaningful inquiry" into the consequences of such development can be made. (13 Cal.3d at p. 77, fn. 5.) ■ As appellant has not demonstrated that such meaningful inquiry can be made at this point in time, we conclude that the Planning Commission did not abuse its discretion in certifying an EIR which confined itself to the environmental impact of that for which the use permit was sought, i.e., the drilling of exploratory wells.

The judgment is affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.

A petition for a rehearing was denied July 19, 1977.