[Civ. No. 63680. Second Dist., Div. Four. July 30, 1982.]

BRENTWOOD ASSOCIATION FOR NO DRILLING, INC.,
Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Appellants;
CHEVRON U.S.A., INC., Real Party in Interest and Appellant.

NO OIL, INC., et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants;
CHEVRON U.S.A., INC., Real Party in Interest and Appellant.

494

COUNSEL

Fulop & Hardee, Paul M. Kelley, Barash & Hill and K. Phillip Knierim for Plaintiff and Appellant.

Ira Reiner, City Attorney, Gary R. Netzer, Assistant City Attorney, and Julie Downey, Deputy City Attorney, for Defendants and Appellants.

Lawler, Felix & Hall, William K. Dial, Erwin E. Adler and Randolph C. Visser for Real Party in Interest and Appellant.

Dummit & Agajanian, Craig S. Dummit and Joyce D. Kosman for Plaintiffs and Respondents.

## OPINION

**LUROS, J.**\*—This is an appeal by the City of Los Angeles (hereinafter City) and Chevron U.S.A., Inc. (hereinafter Chevron) from the judgment of the Los Angeles Superior Court granting a petition for writ of mandamus and compelling the City to vacate its decision to issue, based solely on a negative declaration (Cal. Admin. Code, tit. 14, § 15083),[1] a conditional use permit to Chevron allowing them to drill a single exploratory corehole and prohibiting the City to take any further action thereon until an environmental impact report is prepared. Brentwood Association for No Drilling, Inc. (hereinafter BRAND) cross-appeals from the order of the trial court denying its motion for attorneys' fees sought pursuant to Code of Civil Procedure section 1021.5. We affirm the trial court in both orders being appealed.

### FACTS

### A. *The Application*

On December 28, 1978, Chevron applied to the City for a conditional use permit[2] to allow for the drilling of two exploratory core holes on the Riviera Country Club[3] situated in Pacific Palisades. In it application Chevron stated that previous core holes drilled in the surrounding area by other oil companies, including Occidental Oil,[4] revealed the presence of oil and gas in the vicinity and the proposed core holes would confirm their presence in producible quantities.

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Unless otherwise indicated, all statutory references herein will be to title 14 of the California Administrative Code.

[2]A conditional use permit for exploratory geological drilling (see Los Angeles Municipal Code [hereafter L.A.M.C.] § 12.24, C-1.1, subd. (a)(1)) is differentiated by the City from a supplemental use "O" district in that the former allows for drilling and testing a temporary geological core hole for a fixed period of time and requires abandonment whereas the latter allows for oil drilling and production.

[3]The Riviera Country Club is located just off Sunset Boulevard, a heavily traveled roadway, and is the site of the Los Angeles Open, a golf tournament which attracts large numbers of tourists and automobiles.

[4]The Occidental Oil core hole was the subject of the Supreme Court's decision in *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 76 [118 Cal.Rptr. 34, 529 P.2d 66].

Upon receipt of the application by the City's planning department, the environmental review committee conducted an initial threshold study (see § 15080) to determine if the proposed project might have a significant environmental effect requiring the preparation of an environmental impact report. The planning department solicited and received information from other city agencies and analyzed prior drilling projects and environmental reports prepared in conjunction with them regarding both environmental impact and technical details. The study emphasized the temporary nature of the project and the city's previous experience with 200 exploratory oil drilling projects for which conditional use permits were issued since 1963.[5]

The environmental review committee concluded that no significant impacts were apparent from an implementation of the proposed project but certain "cumulative concerns" including illumination, traffic, noise and possible public controversy were identified. However, it was found that an adoption of certain conditions would mitigate these concerns to a level of insignificance. This environmental review was largely based on the city's previous experience with the 200 similar temporary drilling projects. Thereupon, the planning department prepared a preliminary conditional negative declaration with public notice and provision for public review and comment.

## B. *The Administrative Proceedings*

Following the planning department's determination to issue the negative declaration, a hearing was held on March 9, 1979, before the City's associate zoning administrator regarding the appropriateness of issuing a negative declaration and a conditional use permit as to Chevron's proposed project. Both oral testimony and voluminous written materials were received during the four-hour hearing. Numerous citizens appeared at the hearing and objected to the issuance of a conditional use permit without completing an environmental impact report.[6] On April 18, 1979, the associate zoning administrator rendered his decision to is-

---

[5]In the period since the enactment of the California Environmental Quality Act of 1970 (§ 15000 et seq.), more than 22 temporary exploratory projects were approved without preparation of an environmental impact report.

[6]This corresponded to the observation of the environmental review committee that the Chevron project had the capability of generating public controversy concerning its environmental effects.

sue a conditional use permit to Chevron to allow for the drilling of one temporary exploratory core hole located on a 1.1 acre site on the driving range area of Riviera County Club. The permit was subject to 27 operating conditions many of which were similar to those imposed by the city with regard to previous core holes with the balance specifically designed for this particular project. The conditions regulated and restricted the purposes for which the core hole was to be used; the times and days during which work may be done; the period for which drilling was permitted after which the core hole was to be plugged and abandoned and the site restored to preexisting condition; the times, maximum number of trips per day, maximum number of trucks, and the route by which workmen were to be brought to and taken from the drilling site including a requirement to hose down the trucks so as to eliminate dust; and, requirements as to the height of the drilling rig, types of motors, soundproofing, camouflage, source of power safety devices, lighting and waste disposal. Based on these conditions and the limited time period involved, the associate zoning administrator concurred with the environmental review committee that the approved project would have no significant effect on the environment.

The decision of the associate zoning administrator was the subject of 55 separate appeals to the board of zoning appeals. These appeals were based on the environmental impact of the proposed project and the necessity for an environmental impact report to assess these consequences. After an eight-hour hearing on June 26, 1979, the board of zoning appeals affirmed the decision and findings of the associate zoning administrator. The board concluded that the potentially adverse effects of the project were both identified and adequately mitigated by the associate zoning administrator and the conditions he imposed. Moreover, the board observed that the surrounding residential areas were far removed from the area that would be adversely affected.

The decision of the board of zoning appeals was appealed to the city council by BRAND, among others. The city council's planning and environment committee reviewed the board's decision at a public hearing held on September 4, 1979. The committee unanimously recommended that the decisions of the associate zoning administrator and the board of zoning appeals be affirmed and the Chevron project be approved.

At a public hearing on October 11, 1979, the Los Angeles City Council reviewed and affirmed the report and recommendation of the planning and environment committee.

On October 23, 1980, Mayor Bradley further reviewed and approved the associate zoning administrator's decision. The mayor's approval concluded the City's action on this matter.

C. *Proceedings in the Superior Court*

Two separate petitions[7] for writ of mandate seeking to set aside the decision of the city council to grant Chevron a 90-day conditional use permit without an environmental impact report were filed in the Los Angeles Superior Court. These cases were consolidated by stipulation and came on for hearing on June 9, 1980. Following oral argument the trial judge announced his intended decision to grant a peremptory writ of mandate compelling the City to set aside its decision and prepare an environmental impact report prior to approval of Chevron's project.[8]

Respondents No Oil, Inc. and BRAND contended below that the City had acted improperly because:

(1) The numerous decisions after public hearing concluding that the project would not have significant environmental impact were not supported by substantial evidence;

(2) The agitation of the neighborhood about the project, by itself, constituted a public controversy which required preparation of an environmental impact report; and

(3) The City erred in considering the project to be the drilling of a temporary geological exploratory core hole; they contended the City should have considered the environmental effects of hypothetical oil wells producing oil.

In granting respondents' petitions, the trial court made several determinations.

---

[7]One petition was filed by BRAND on November 21, 1979, and the other by No Oil, Inc. on November 26, 1979.

[8]This ruling was later clarified at hearing on appellants' motions for reconsideration of intended decision on July 10, 1980. Further elucidation was provided at a later hearing held on September 25, 1980, to determine BRAND'S motion for attorneys' fees. Though requested by the parties, Judge Foster refrained from issuing or adopting findings of fact and conclusions of law. He defined his role as limited to determining if substantial evidence supported the City's decision and whether the City proceeded in the manner required by law, not to exercise his independent judgment on the evidence.

First, the court found there would be "some adverse environmental implications" because as many as four truck trips per day would be added to the Los Angeles public streets to undertake this temporary drilling project. It found no other significant environmental effects. Based on the truck traffic, the court held the conditional use permit and negative declaration, in effect, acknowledged that "there is some impact on the environment which can be reduced"; accordingly, the court held the City had not proceeded in the manner required by law.

Second, the court held that the neighboring landowners' opposition constituted public controversy as to the project.

Third, the court stated that it was a combination of those two factors—the additional truck traffic and the controversy raised by the adjacent landowners—which caused him to conclude that an environmental impact report should be required for this project to fully meet the purposes behind California Environmental Quality Act.

Finally, the court rejected respondents' contention that the project encompassed oil production activities. Consequently, it held that the City's environmental assessment and determination need only extend to core hole exploration activities.

Thereafter, BRAND's motion for attorneys' fees pursuant to Code of Civil Procedure section 1021.5 came on for hearing on September 25, 1980. The trial court denied the motion finding that BRAND failed to meet any of the statutory criteria for the award of such fees. The court found that the case was not one involving great public interest but, rather, was limited to the interest of adjacent landowners. Similarly, the litigation did not confer a significant benefit on the general public or a large class of persons, rejecting BRAND's contention that the lawsuit would change an alleged citywide "policy" of not preparing environmental impact reports for temporary geological core hole projects. Finally, the trial judge concluded that BRAND did not demonstrate that necessity and financial burden made the award appropriate.

## ISSUES ON APPEAL

1. Was the City correct in limiting its consideration to the environmental effects of exploratory core hole drilling for a limited period rather than considering the effects of full scale production drilling?

2. Did the trial court err in not correctly applying the substantial evidence test in its review of the action taken by the City in granting Chevron a conditional use permit based on a negative declaration rather than requiring an environmental impact report?

3. Did the trial court err in finding that significant environmental impacts would result from the Chevron project as conditioned and, therefore, an environmental impact report was required?

4. Did the public controversy concerning the possible environmental impacts of the Chevron project require preparation of an environmental impact report?

ISSUES ON CROSS-APPEAL

1. Did BRAND's successful prosecution of its petition for writ of mandate compelling the City to withhold any action on Chevron's application until an environmental impact report was prepared satisfy the statutory requirements of Code of Civil Procedure section 1021.5 regarding award of attorneys' fees thereby making the denial of such fees an abuse of discretion?

DISCUSSION OF ISSUES ON APPEAL

A. *Standard of Review*

As all parties to the instant case agree and as expressly provided in Public Resources Code section 21168, the scope of judicial review of the action of the city council in issuing Chevron a conditional use permit based upon a negative declaration rather than an environmental impact report is strictly limited to the "substantial evidence" test. (*Markley v. City Council* (1982) 131 Cal.App.3d 656, 665 [182 Cal.Rptr. 659]; *No Oil, Inc.* v. *City of Los Angeles, supra*, 13 Cal.3d at p. 74.) Similarly, "[t]his court's appellate review is also governed by the substantial evidence test . . . ." (131 Cal.App.3d at p. 667.) As we observed in *Markley*, application of the substantial evidence test rather than the independent judgment test in reviewing administrative judgments such as those herein at issue is illustrative of the wisdom of the doctrine of separation of powers which entrusts determinations as to whether certain disputed activities will be permitted in designated areas where there are competing and conflicting interests on both sides of the controversy.

"Administrative bodies are permitted to make all of these determinations provided that (1) substantial evidence supports the administrative decision; and (2) an opportunity for a fair hearing is afforded to the interested parties." (*Ibid.* at p. 667.)

There is no question but that appellant City, in providing no fewer than four separate levels of public hearings, amply satisfied the hearing requirement of *Markley*. However, the question remains as to whether substantial evidence supports the administrative decision herein under scrutiny. In resolving this question, we are mindful that the self-same considerations regarding a test oil well project in close proximity to the one herein at issue[9] was before the Supreme Court in *No Oil*. While we are obligated to conduct a review of the entire administrative record in determining whether the decision of the city council to grant Chevron a conditional use permit based on a negative declaration is supported by substantial evidence (*Markley v. City Council, supra*, 131 Cal.App.3d at p. 667; *McCarthy v. California Tahoe Regional Planning Agency* (1982) 129 Cal.App.3d 222, 229 [180 Cal.Rptr. 866]), it is significant that the evidence reviewed by the Supreme Court in *No Oil* was substantially similar and was propounded by some of the same experts as in the case at bench. Thus, the resolution of these issues by the Supreme Court in *No Oil*, while clearly not controlling, is highly persuasive and provides valuable guidance for the case at bench.

Finally, in carrying out our obligation to review the administrative record in the instant case, it must be borne in mind that neither the trial court nor this court is permitted to focus upon the evidence favoring the administrative decision in disregard of other relevant evidence in the record which may militate against that decision. (See *LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 638-639 fn. 22 [83 Cal.Rptr. 208, 463 P.2d 432]; *Northern Inyo Hosp. v. Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 24 [112 Cal.Rptr. 872].) Rather than employing such an "isolationist" perspective, a review of the entire administrative record is mandated. (*Ibid. Markley v. City Council, supra*, 131 Cal.App.3d at p. 667; *McCarthy v. California Tahoe Regional Planning Agency, supra*, 129 Cal.App.3d at p. 229.)

B. *Scope of Review of Chevron's Application*

---

[9]The drill site at issue in *No Oil Inc.* v. *City of Los Angeles* like the one that is the subject of Chevron's application was in the Pacific Palisades area. (13 Cal.3d at p. 76.)

In the case at bench, the trial court restricted its scope of review of the City's action on Chevron's application to a consideration of the environmental impacts of the proposed exploratory geological drilling as opposed to full scale oil production at the designated site. In so doing, the court rejected BRAND's contention that the appropriate standard of environmental review in this case should include the effects of full scale oil production inasmuch as Chevron's proposed core hole was confirmatory rather than exploratory and, therefore, commercial oil production at the specified location was a likely consequence of Chevron's core hole drilling.

The Supreme Court in *No Oil* specifically left this question open. (13 Cal.3d at p. 77, fn. 5.) In resolving this issue, we must look to the evidence cited to this court by BRAND. (*Markley* v. *City Council, supra,* 131 Cal.App.3d at p. 673.) In BRAND's respondent's brief, reference is made to evidence provided by the City's petroleum administrator that 55 percent of core holes are successful and 99 percent of applications for drilling after core holes have proven successful are approved. Thus, little more than one-half of all core hole projects culminate in approved applications for commercial drilling. As the trial court noted below and as the Supreme Court observed in *No Oil*, to require the preparation of an environmental impact report with regard to commercial drilling rather than mere exploratory drilling would seem, in the instant case, to "'... tend toward uninformative generalities'" (*No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d at p. 77, fn. 5 quoting from *Scientists' Inst. for Pub. Info., Inc.* v. *Atomic Energy Com'n* (D.C. Cir. 1973) 481 F.2d 1079, 1093; *Lake County Energy Council* v. *County of Lake* (1977) 70 Cal.App.3d 851, 856 [139 Cal.Rptr. 176].) Thus, the decision of the city council to grant Chevron a conditional use permit on the basis of a negative declaration rather than requiring preparation of an environmental impact report must be reviewed from the perspective of the potential impact on the environment of exploratory drilling rather than full scale production.

## C. *The Trial Court's Review of the Administrative Record*

There is no question but that the trial court applied the appropriate test to its review of the administrative record. The trial judge expressly based his refusal to make findings of fact and conclusions of law on the grounds that he was required to merely review the administrative record to ascertain whether substantial evidence existed therein to support the

decision of the city council regarding Chevron's application and not to exercise his independent judgment. This is in direct accordance with the statutory requirements of Public Resources Code section 21168. However, even if the trial court incorrectly applied the mandate of section 21168 reversal on that ground alone would not be required inasmuch as this court is obligated to independently review the administrative record by reference to the same standard. Thus, at this juncture, any error by the trial court in applying the wrong standard or incorrectly applying the standard required by section 21168 would be moot. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 149, fn. 22 [93 Cal.Rptr. 234, 481 P.2d 242].) We now proceed to conduct our independent review.

### D. *Substantial Evidence of a Significant Environmental Effect*

Section 15084 subdivision (b) provides that an environmental impact report "... should be prepared whenever it can be *fairly argued* on the basis of substantial evidence that the project *may* have a significant effect[10] on the environment" (italics added; see also *No Oil, Inc.* v. *City of Los Angeles, supra*, 13 Cal.3d at p. 75 and *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 1001 [165 Cal.Rptr. 514].) Thus, appellants overstate the effect of the substantial evidence test as set forth in section 21168 when they contend that "[t]he trial court was bound to uphold the City Council's finding of no substantial or potentially substantial adverse effects from this 90-day ... [conditional use permit] if the record before the City Council supported such a determination ... even though evidence to the contrary may be found in the record." The appropriate standard is far narrower. ■ As the court in *Friends of "B" Street* correctly held: "... But if a local agency is required to secure preparation of an EIR 'whenever it can be *fairly argued* on the basis of substantial evidence that the project may have significant environmental impact' (*No Oil, Inc.* v. *City of Los Angeles, supra*, 13 Cal.3d at p. 75; italics added), then an agency's adoption of a negative declaration is not to be upheld merely because substantial evidence was presented that the project would not have such impact. The trial court's function is to determine whether substantial evidence supported the agency's conclusion as to whether the prescribed 'fair

---

[10]"State EIR regulation defines 'significant effect' as 'a substantial, or potentially substantial, adverse change in any of the physical conditions within the area affected by the activity including land, air, water, minerals, flora, fauna, ambient noise, and objects of historical or aesthetic significance.' (... § 15040.)" (*Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 1000 [165 Cal.Rptr. 514].)

argument' could be made. If there was substantial evidence that the proposed project might have a significant environmental impact, evidence to the contrary is not sufficient to support a decision to dispense with preparation of an EIR and adopt a negative declaration, because it could be 'fairly argued' that the project might have a significant environmental impact. Stated another way, if the trial court perceives substantial evidence that the project might have such an impact, but the agency failed to secure preparation of the required EIR, the agency's action is to be set aside because the agency abused its discretion by failing to proceed 'in a manner required by law.' (Pub. Resources Code, § 21168.5.)" (106 Cal.App.3d at p. 1002; see also *Dehne v. County of Santa Clara* (1981) 115 Cal.App.3d 827, 845, fn. 7 [171 Cal.Rptr. 753].)

■ While it is true that an administrative agency charged with undertaking the three-tiered environmental analysis established by sections 15080 to 15084 is entitled to disbelieve even the uncontradicted testimony of a witness or witnesses if it is inherently improbable or if the witness has an interest in the matter under dispute (see Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, §§ 1112-1113, pp. 1028-1029) and given that the agency may reject an opinion if it is unsupported by the facts from which it is derived (*id.* at § 1116, p. 1032; see *People v. Coogler* (1969) 71 Cal.2d 153, 166 [77 Cal.Rptr. 790, 454 P.2d 686]) this does not characterize the evidence in the administrative record of the potential and actual adverse environmental impacts of the project proposed by Chevron as modified, conditioned and approved by the City. ■ Even though there is significant evidence to the contrary, the administrative record contains substantial credible evidence of environmental impacts associated with the Chevron project having a potential for such disastrous consequences that it cannot be ignored. In addition to substantial evidence of the projects effects on traffic and noise, the administrative record contained substantial evidence of the project's having a potential for adverse seismic consequences from drilling into the active Malibu Coast-Hollywood-Raymond fault. Moreover, the evidence demonstrated that the proposed Chevron core hole posed a danger to the underground resevoir beneath the Riviera Country Club stemming from drilling into the prevailing alluvial soil conditions as evidenced by the failure of the Baldwin Hills Resevoir.[11]

---

[11]See *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 363 [165 Cal.Rptr. 799, 612 P.2d 889].

On virtually an identical state of the administrative record and confronting the self-same issues as those raised by the proposed project herein under scrutiny, the Supreme Court in *No Oil* concluded that "... the value of an impartial environmental analysis cannot be gainsaid." (13 Cal.3d at p. 88.) Given such massive seismic and soil erosion consequences predicted by experts, although disputed by opposing experts, we must conclude, as did the Supreme Court in *No Oil*, that "... in such cases of factual controversy '[t]he very uncertainty created by the conflicting assertions made by the parties as to the environmental effect ... underscores the necessity of the EIR to substitute some degree of factual certainty for tentative opinion and speculation.' [*County of Inyo* v. *Yorty* (1973) 32 Cal.App.3d 795, 814 (108 Cal.Rptr. 377).]" (13 Cal.3d at p. 85.)

Thus, in the case at bench, as in *Friends of "B" Street*, "... the adoption of a negative declaration was an abuse of discretion." (106 Cal.App.3d at p. 1003.) This holding is compelled by the realization that the issuance of a negative declaration has a "... terminal effect on the environmental review process ...." (*Citizens of Lake Murray Area Assn.* v. *City Council* (1982) 129 Cal.App.3d 436, 440 [181 Cal.Rptr. 123].) Given the potentially disastrous consequences presaged by the experts, such dispensation with the duty to undertake a careful and studied analysis of the likelihood and extent of such consequences which would follow from adhering to the city council's conclusion that a negative declaration would suffice for the Chevron project demonstrates that the City "... abused its discretion by failing to proceed 'in a manner required by law.' (Pub. Resources Code, § 21168.5.)" (*Friends of "B" Street* v. *City of Hayward, supra*, 106 Cal.App.3d at p. 1002; *Dehne* v. *County of Santa Clara, supra*, 115 Cal.App.3d at p. 845, fn. 7.) Thus, we affirm the judgment of the trial court granting the petition for writ of mandate and directing the City to take no further action on Chevron's application until an environmental impact report is prepared.

## E. *Public Controversy*

Because we are compelled to affirm on the basis of the substantial evidence in the administrative record of the significant environmental impacts that may result from the Chevron project, we need not consider whether the public controversy generated by the project would, in and of itself, require the preparation of an environmental impact report. However, we do note that section 15084, subdivision (c) unequivocally

provides that an environmental impact report "... should be prepared when there is serious public controversy concerning the enviroinmental effects of a project." Moreover, the Supreme Court in *No Oil* stated in no uncertain terms "... that 'the existence of serious public controversy concerning the environmental effect of a project *in itself* indicates that preparation of an EIR is desirable.' (13 Cal.3d at pp. 85-86.)" (*Friends of "B" Street* v. *City of Hayward, supra,* 106 Cal.App.3d at p. 1001; italics added.)

### DISCUSSION OF ISSUE ON CROSS-APPEAL

BRAND separately appeals from the order denying its motion seeking an award of attorneys' fees pursuant to Code of Civil Procedure section 1021.5. That statute provides for an award of such fees to a successful litigant in an action resulting in the enforcement of an important right affecting the public interest if three conditions are satisfied: (1) the action conferred a significant benefit, whether monetary or otherwise, on the general public or a large class of persons; (2) the necessity and financial burden of private enforcement are such as to make the award appropriate; and (3) in the interests of justice such fees should not be paid out of the recovery, if any.[12]

■ There can be no question but that the considerations inherent in the California Environmental Quality Act of 1970, under the provisions of which the instant case was commenced, constitute "important rights affecting the public interest." (See §§ 15010, 15011 and 15011.5; see also *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049]; *No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d at p. 83; *Friends of "B" Street* v. *City of Hayward, supra,* 106 Cal.App.3d at p. 993.) However, the trial court below expressly found that the litigation before it neither conferred a significant benefit on a large class of persons nor imposed a financial burden out of proportion to the benefits received. As the Supreme Court held in *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 939-940 [154 Cal.Rptr. 503, 593 P.2d 200] "... the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine ... the size of the class receiving benefit, from a realistic assessment, in light of all the

---

[12]Inasmuch as the case at bench only sought a writ of mandate to compel the preparation of an environmental impact report regarding an application for a conditional use permit to allow exploratory geological drilling, this third requirement is not apposite and will not be herein considered.

pertinent circumstances, of the gains which have resulted in a particular case. [Citation omitted.]" The court further observed that when an action to enforce significant public interest is brought against a governmental agency "the necessity of private, as compared to public, enforcement becomes clear (see, e.g., *LaRaza Unida* v. *Volpe* ... [(N.D. Cal. 1972)] 57 F.R.D. 94, 101; [affd. (9th Cir. 1973) 488 F.2d 559]" 23 Cal.3d at p. 941.) Nevertheless, the court held that it still is necessary for the trial court to "... determine whether the financial burden in ... [such a] case is such that an attorney fee award is appropriate in order to assure the effectuation of an important public policy." (23 Cal.3d at p. 942.)

Unlike the situation which confronted the Supreme Court in *Woodland Hills Residents Assn.* where the trial court did not pass upon either of these considerations because the trial predated enactment of Code of Civil Procedure section 1021.5 (*ibid.* at pp. 940-941; see also *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 559 [183 Cal.Rptr. 73, 645 P.2d 124]), the trial court below considered evidence presented on the motion for fees, made findings, and based on those findings, resolved the motion adversely to BRAND. Unlike the standard of review which we are compelled to apply pursuant to Public Resources Code section 21168, the trial court's ruling on the motion for attorneys' fees represents a pure act of judicial discretion. In this context, as the Supreme Court observed in *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303] and as we reiterated in *Inmates of Sybil Brand Inst. for Women* v. *County of Los Angeles* (1982) 130 Cal.App.3d 89, 114 [181 Cal.Rptr. 599]: "'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." [Citations.]' *Serrano* v. *Priest, supra,* 20 Cal.3d at p. 49.)" While both *Serrano* and *Sybil Brand* concerned the exercise of the trial court's discretion as to the amount of attorneys' fees awarded under Code of Civil Procedure section 1021.5 whereas the instant case involves the trial court's exercise of discretion as to whether the statutory prerequisites for any award of such fees at all have been satisfied, the same standard of review applies. As the Supreme Court most recently observed in *Rumford,* "[w]hether plaintiffs have met ... [the] requirements [of Code Civ. Proc., § 1021.5] for an award of trial ... fees ... [is a] question [ ] best decided by the trial court. [Citations omitted.]" (31 Cal.3d at p. 559.) Because we are convinced that the trial court's

ruling denying BRAND's motion for attorneys' fees was not clearly wrong, we find no abuse of discretion and affirm the ruling on the motion. (*Serrano v. Priest, supra,* 20 Cal.3d at p. 49; *Inmates of Sybil Brand Inst. for Women* v. *County of Los Angeles, supra,* 130 Cal.App. 3d at p. 114.).

The judgment of the trial court granting the petition for writ of mandate is affirmed as is its order denying the motion for attorneys' fees.

Kingsley, Acting P. J., and McClosky, J., concurred.

The petition of plaintiff and appellant for a hearing by the Supreme Court was denied November 24, 1982. Newman, J., did not participate therein.