[Civ. No. 6487. Fifth Dist. Nov. 26, 1982.]

SAM PISTORESI et al., Plaintiffs and Respondents, v.
CITY OF MADERA et al., Defendants and Respondents;
TREND HOMES, INC., Real Party in Interest and Appellant.

COUNSEL

Robert K. Hillison for Real Party in Interest and Appellant.

Parichan, Renberg, Crossman & Harvey, Richard C. Crossman, John K. Ormond and Richard L. Harriman for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

OPINION

ANDREEN, J.—This appeal follows the issuance of a writ of administrative mandate requiring the Madera County Local Agency Formation Commission (LAFCO) to set aside its adoption of a negative declaration relative to a proposed annexation. We affirm.

FACTS

Real party in interest, Trend Homes, Inc., purchased from a Madera city councilman a 32-acre parcel of land situated on the southern edge of the City of Madera. It sought and obtained approval of annexation from LAFCO. A "negative declaration"[1] on the annexation was recommended by the LAFCO staff.

---

[1]If there is a possibility that a proposed project will have a significant effect upon the environment, then the agency, here LAFCO, must conduct an initial threshold study. If the initial study reveals that the project will not have such effect, the agency may complete a negative declaration briefly describing the reasons supporting this determination. (*Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 1000 [165 Cal.Rptr. 514].)

LAFCO had before it a staff report which identified an adequate supply of undeveloped property already existent in the City of Madera. At the hearing on the proposal, it was pointed out that within the city there already were 400 to 600 acres zoned for development that were lying idle and could "provide upwards of 2,000 homes" if subdivided.

Respondent Sam Pistoresi appeared at the LAFCO hearing. He owns 20 acres immediately west of the proposed annexation. He questioned its impact upon his horticultural practices, since prevailing winds would blow from his vineyard over the subdivision, carrying dust and chemical sprays over the proposed homes. In response to his concern, the chairman of LAFCO conceded that in such circumstances ". . . the houses usually win." Pistoresi also noted the Trend Homes, Inc. parcel is prime agricultural soil which should be reserved for agricultural purposes. Additionally, one of the commissioners noted if the parcel were to be developed as planned, it would seriously overcrowd the schools and cause traffic congestion.

LAFCO voted to accept the negative declaration and to approve the proposed annexation.

Thereafter the respondents filed their complaint to enjoin annexing the parcel, for writ of administrative mandate directing that the proposed annexation was a "project" within the meaning of the California Environmental Quality Act (CEQA) and that CEQA required an environmental impact report (EIR) to be filed, and for other relief.

The hearing before the lower court was concerned with the administrative mandate action only and was limited to the issue[2] of whether there was substantial evidence presented at the LAFCO hearing of August 19, 1980, to warrant the adoption of a negative declaration as opposed to undertaking a full-blown EIR. The court determined the annexation was a "project" within the ambit of CEQA and that under the applicable standard an EIR was required. Accordingly, judgment was entered directing LAFCO to set aside its adoption of the negative declaration and to prepare an EIR.[3]

Trend Homes appeals, contending the annexation is not a "project" within CEQA and therefore no EIR is required, and, alternatively, if it is a "project" then the acceptance of the negative declaration was proper procedure and the annexation should be allowed to proceed.

---

[2]At the hearing the court denied appellant's motion to dismiss the causes for injunctive and declaratory relief made on the basis of a lack of evidence to support them. Appellant complains the motion should have been granted. Appellant's argument has no merit inasmuch as appellant's counsel stipulated the hearing would be limited to determining whether there was evidence to support the negative declaration adopted at the LAFCO hearing.

[3]The parties later stipulated to modify the judgment to read that an EIR need be prepared only when and if the annexation again was presented to LAFCO or the city for approval.

CALIFORNIA ENVIRONMENTAL QUALITY ACT

If the proposed annexation is an activity covered by CEQA then the provisions of that act would require the preparation of an EIR under certain conditions. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 254-255 [104 Cal.Rptr. 761, 502 P.2d 1049].) Appellant's first argument is that the annexation is not a "project" that falls within CEQA and therefore no EIR was required.

*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263 [118 Cal. Rptr. 249, 529 P.2d 1017] dealt with an issue somewhat similar to the one presented here and held that CEQA applied. As the court framed the issue in *Bozung*: "The significant issue in this appeal is whether . . . CEQA applies to the approval of annexation proposals by a . . . LAFCO, where property development is intended to follow the annexation approval and annexation." (At p. 268.) In *Bozung* the developer petitioned the Ventura LAFCO to approve a city's proposed annexation of his undeveloped agricultural county property. The LAFCO approved the proposed annexation and the city proceeded to annex. The land was to be developed after annexation as commercial and residential property. (At pp. 269-270.) The Supreme Court held that "a LAFCO approval of a city annexation is a project within the meaning of [CEQA]." (At p. 279, fn. omitted.)

Trend Homes, Inc. seeks to distinguish *Bozung* from the instant case because in *Bozung* the county had refused residential zoning for the property and annexation was a prerequisite to development. Although it is true that in the instant case both county and city had the land zoned residential, the county zoning was for 32 units, 1-acre-minimum lots of single-family dwellings, while the city prezoning proposal was for 1 home per 4,500 square feet, which would result in approximately 310 homes.

Trend Homes, Inc. argues we should be guided by the case of *Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.* (1975) 51 Cal. App.3d 648 [124 Cal.Rptr. 635]. It held the action of a LAFCO was not subject to the requirements of CEQA, where the proceeding was to detach a small part of a recreation district. The reason for the ruling was that there was nothing to suggest ". . . that the availability of the property in the detached area for development in any respect depends upon the detachment." (At p. 665.)

In the instant case, the annexation is a prerequisite for the proposed development, because of the need for city services. It is therefore apparent that *Bozung*, not *Simi Valley*, is the controlling authority.

## Was Substantial Evidence Presented at the LAFCO Hearing to Require an EIR?

The Supreme Court has declared that "since the preparation of an EIR is the key to environmental protection under CEQA, accomplishment of the high objectives of that act requires the preparation of an EIR *whenever it can be fairly argued on the basis of substantial evidence* that the project may have significant environmental impact." (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 75 [118 Cal.Rptr. 34, 529 P.2d 66], italics added; see also Cal. Admin. Code, tit. 14, § 15084, subd. (b), enunciating the same standard.)

If there was substantial evidence the proposed project might have a significant environmental impact, evidence to the contrary is not sufficient to support a decision to dispense with preparation of an EIR and adopt a negative declaration, because it could be "fairly argued" the project might have a significant environmental impact. (*Brentwood Assn. for No Drilling, Inc.* v. *City of Los Angeles* (1982) 134 Cal.App.3d 491, 503-504 [184 Cal.Rptr. 664]; *Friends of "B" Street* v. *City of Hayward, supra,* 106 Cal.App.3d at p. 1002.)

The evidence in the record from which an argument fairly could be made consisted of a staff report noting the present use of the parcel was agricultural and the proposed development was residential, that county zoning required residential rural one-acre-minimum lots, that the city's prezoning was one unit per forty-five hundred square feet, and that onsite drainage facilities would "probably" be required. The report further stated an adequate supply of recently annexed parcels were available within the city for residential development and stated: "Annexation of additional lands for residential development should not be encouraged by the City and LAFCO until a certain amount of actual physical development occurs [on these other parcels]."

Trend Homes, Inc. argues that whether the land remains in the county or is annexed into the city, it is still zoned residential. This overlooks reality. The present use of the property is agricultural. Annexation into the city will result in accelerated conversion of the property into residential uses. Also, the concentration of residential use would increase with annexation. We note that section 15081, subdivision (c) of the California Administrative Code, title 14, states: "Some examples of consequences which may be deemed to be a significant effect on the environment are contained in Appendix G." Appendix G is found in section 15203 of the same title. It states: "A project will normally have a significant effect on the environment if it will: . . . (k) Induce substantial growth or concentration of population."

The transcript of the LAFCO hearing reveals respondent's concern that the prevailing winds would carry chemicals and insecticides from his property over

to the planned development. This concern is real, for under regulations issued by the Director of Food and Agriculture of the State of California an application for a permit for the agricultural use of a pesticide requires identification of residential areas which could be adversely impacted by the use of a pesticide. (Food & Agr. Code, div. 7, ch. 3, § 14001 et seq.; Cal. Admin. Code, tit. 3, § 2452, subd. (j)(5)(C).) A properly completed EIR would include a statement by the county agriculture commissioner as to any differences in the use of restricted pesticides on the Pistoresi parcel as affected by density of population on the Trend Homes, Inc. parcel.

One of the purposes of a local agency formation commission is the discouragement of urban sprawl. (Gov. Code, § 54774.) An EIR would examine alternatives to the proposed project (Pub. Resources Code, § 21100, subd. (d)) which might include development of open areas within the existent city limits before annexing prime agricultural land.

Finally, Trend Homes, Inc. asserts it would be premature and a burden on developers to hold that an EIR is required at the annexation stage. In some cases it may be. But the environmental concerns presented to LAFCO could be adequately addressed only by an EIR. Requiring one early in the process enables decision makers to make determinations based upon adequate data. (*Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d at p. 282; *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 533 [160 Cal.Rptr. 907]; Cal. Admin. Code, tit. 14, §§ 15013, subd. (b), 15065, subd. (c).)

We conclude that on the facts before it the trial court correctly determined the annexation is a "project" subject to CEQA and that there was substantial evidence the annexation might have a significant environmental effect. An EIR was thus required. The judgment is affirmed.

Hanson (P. D.), Acting P. J., and Woolpert, J., concurred.