Filed 3/25/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| UNION OF MEDICAL MARIJUANA PATIENTS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF UPLAND, <br><br> Defendant and Respondent. | D069293 <br><br><br> (Super. Ct. No. CIVRS1307979) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Gilbert G. Ochoa, Judge. Affirmed.

Channel Law Group, Jamie T. Hall and Julian K. Quattlebaum, for Plaintiff and Appellant.

Jones & Mayer, Kimberly Hall Barlow and Krista MacNevin Jee, for Defendant and Respondent.

The Union of Medical Marijuana Patients, Inc. (UMMP) appeals the trial court's denial of its petition for writ of mandate seeking to set aside under the California

Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)[1] an ordinance prohibiting mobile medical marijuana dispensaries (mobile dispensaries) in the City of Upland (City). UMMP contends the City's adoption of the ordinance violated CEQA because the City did not first consider the ordinance's reasonably foreseeable environmental impacts. The City counters that the ordinance is not a "project" subject to CEQA, or is exempt under CEQA's "commonsense" exemption for projects that have no potential to cause a significant effect on the environment. We conclude the ordinance is not a project under CEQA, and affirm on that basis. We therefore do not address the City's contention regarding the commonsense exemption.

FACTUAL AND PROCEDURAL BACKGROUND

*The 2007 Ordinance*

In 2007, the City adopted Ordinance No. 1813 (the 2007 ordinance),[2] which added to the City's municipal code a provision specifying that "[n]o medical marijuana

---

[1]     All further statutory references are to the Public Resources Code unless otherwise indicated.

[2]     The City moves this court to take judicial notice of one ordinance (No. 1813), three provisions of the City of Upland Municipal Code (§§ 17.14.020, 17.12.050, & 1.01.040), and the Attorney General Guidelines for the Security and Non-diversion of Marijuana Grown for Medical Use (Aug. 2008). UMMP opposes the motion because the documents are not in the administrative record and were not before the City when it adopted the challenged ordinance. "Although extra-record evidence is not admissible to contradict evidence upon which the administrative agency relied in making its quasi-legislative decision, or to raise a question regarding the wisdom of that decision [citation], it may be admissible to provide background information regarding the quasi-legislative agency decision, to establish whether the agency fulfilled its duties in making the decision, or to assist the trial court in understanding the agency's decision." (*Outfitter Properties, LLC v. Wildlife Conservation Bd.* (2012) 207 Cal.App.4th 237, 251.) We

2

dispensary . . . shall be permitted in any zone within the city."  The 2007 ordinance

defined a medical marijuana dispensary as a "facility or location, whether fixed *or*

*mobile*, which provides, makes available or distributes marijuana to a primary caregiver,

a qualified patient or a person with an identification card issued in accordance with" state

law.  (Italics added.)

The City conducted an initial study of the 2007 ordinance's potential

environmental effects and concluded "there was no substantial evidence that the

[ordinance] could have a significant effect on the environment . . . ."  Accordingly, the

City prepared and adopted a "[n]egative [d]eclaration" under CEQA.  That declaration

was not challenged.

*The 2013 Ordinance*

In 2013, the City adopted Ordinance No. 1873 (the 2013 ordinance), which added

a new chapter to the municipal code expressly prohibiting mobile dispensaries within the

City.[3]  The ordinance recited that "mobile dispensaries have been associated with

---

grant the City's motion as to the ordinance and municipal code provisions and take
judicial notice of these documents.  We deny the motion as to the third party publication.

[3]     The 2013 ordinance provides in pertinent part:

"Mobile Marijuana Dispensaries are prohibited in the City of Upland.  No
person shall operate any Mobile Marijuana Dispensary within the City. . . .

[¶] . . . [¶] . . .

"No person shall deliver marijuana to any location within the City from a
Mobile Marijuana Dispensary, regardless of where the Mobile Marijuana

criminal activity," and stated that more than 34 mobile dispensaries within 20 miles of the city "advertised direct delivery of marijuana on the internet commercial listing service 'weedmaps.com.' " Based on these and other observations, the City "determined that there is a high likelihood that mobile . . . dispensaries will immediately flourish in the City without the adoption of this Ordinance."

Before the City adopted the 2013 ordinance, UMMP submitted comments in opposition. UMMP explained it is a "not-for-profit civil rights organization that is devoted to defending and asserting the rights of medical cannabis patients." UMMP argued the City was required to undertake a preliminary review under CEQA because the 2013 ordinance constituted a " 'project' " inasmuch as prohibiting mobile dispensaries would have "foreseeable environmental effects," such as (1) increased travel by residents who would now be forced to travel outside the City to obtain medical marijuana; and (2) increased indoor cultivation activity within the City, which would result in increases in electrical and water consumption, waste plant material and odor, and hazardous waste materials associated with fertilizing and harvesting marijuana plants.

It appears from the record the City did not address UMMP's comments before adopting the 2013 ordinance.

Dispensary is located or headquartered, or engage in any operation for this purpose. "

4

UMMP filed a petition for writ of mandate challenging the validity of the 2013 ordinance on generally the same grounds asserted in its comment letter to the City.[4] The City argued the 2013 ordinance was not subject to environmental review either because it was not a project as defined by CEQA, or because it fell within CEQA's commonsense exemption. After a hearing, the trial court denied UMMP's petition, explaining the City "did not fail to proceed in the manner required by law and there was no violation of [CEQA]."

DISCUSSION

*CEQA Overview*

CEQA and its implementing administrative regulations "embody California's strong public policy of protecting the environment." (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285.)[5] CEQA and the Guidelines "establish a three-tier process to ensure that public agencies inform their decisions with environmental considerations." (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380 (*Muzzy Ranch*).)

---

4     UMMP's petition did not challenge the 2007 ordinance, nor could it timely do so. (See § 21167, subd. (b) [30-day statute of limitation for challenging negative declaration].)

5     The implementing regulations (Cal. Code Regs., tit. 14, § 15000 et seq. (Guidelines)) are "prescribed by the Secretary for Resources to be followed by all state and local agencies in California in the implementation of" CEQA. (Guidelines, § 15000; § 21083.) "In interpreting CEQA, we accord the Guidelines great weight except where they are clearly unauthorized or erroneous." (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 428, fn. 5.)

"The first tier is jurisdictional, requiring that an agency conduct a preliminary review to determine whether an activity is subject to CEQA." (*Muzzy Ranch, supra*, 41 Cal.4th at p. 380.) "An activity that is not a 'project' as defined in [CEQA and the Guidelines] is not subject to CEQA." (*Id.* at p. 380; see § 21065; Guidelines, § 15378.)

"The second tier concerns exemptions from CEQA review. The Legislature has provided that certain projects, such as ministerial projects and repairs to public service facilities of an emergency nature, are exempt." (*Muzzy Ranch, supra*, 41 Cal.4th at p. 380; see § 21080, subd. (b)(1), (2); Guidelines, §§ 15061, subd. (b)(1), 15260.) The Guidelines also "list categorical exemptions or 'classes of projects' that the resources agency has determined to be exempt per se because they do not have a significant effect on the environment." (*Muzzy Ranch*, at p. 380; § 21084, subd. (a); Guidelines, §§ 15300 et seq., 15061, subd. (b)(2).)

"A project that qualifies for neither a statutory nor a categorical exemption may nonetheless be found exempt under what is sometimes called the 'commonsense' exemption, which applies '[w]here it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment.' " (*Muzzy Ranch, supra*, 41 Cal.4th at p. 380, quoting Guidelines, § 15061, subd. (b)(3).)

"If a public agency properly finds that a project is exempt from CEQA, no further environmental review is necessary. [Citation.] . . . If a project does not fall within an exemption, the agency must 'conduct an initial study to determine if the project may have a significant effect on the environment.' [Citation.] If there exists 'no substantial evidence that the project or any of its aspects may cause a significant effect on the

6

environment' [citation], the agency must prepare a 'negative declaration' that briefly describes the reasons supporting its determination [citation]." (*Muzzy Ranch, supra*, 41 Cal.4th at pp. 380-381.)

"CEQA's third tier applies if the agency determines substantial evidence exists that an aspect of the project may cause a significant effect on the environment. In that event, the agency must ensure that a full environmental impact report is prepared on the proposed project." (*Muzzy Ranch, supra*, 41 Cal.4th at p. 381.)

"In a CEQA case, as in other mandamus cases, our review of the administrative record for error is the same as the trial court's; we review the agency's action, not the trial court's decision." (*Muzzy Ranch, supra*, 41 Cal.4th at p. 381.) We review the City's action for " 'a prejudicial abuse of discretion.' " (*Ibid.*, quoting § 21168.5.)

*CEQA's Definition of a Project*

CEQA defines a project (in part) as "[a]n activity directly undertaken by any public agency" that "may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment." (§ 21065; Guidelines, § 15378.) "Ordinances passed by cities are clearly activities undertaken by a public agency and thus *potential* 'projects' under CEQA." (*Santa Monica Chamber of Commerce v. City of Santa Monica* (2002) 101 Cal.App.4th 786, 788, fn. 2, italics added; see *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 171, fn. 7.)

The Guidelines define and provide examples of direct and reasonably foreseeable indirect changes to the environment. "A direct physical change in the environment is a

7

physical change in the environment which is caused by and immediately related to the project. Examples of direct physical changes in the environment are the dust, noise, and traffic of heavy equipment that would result from construction of a sewage treatment plant and possible odors from operation of the plant." (Guidelines, § 15064, subd. (d)(1).)

"An indirect physical change in the environment is a physical change in the environment which is not immediately related to the project, but which is caused indirectly by the project. . . . For example, the construction of a new sewage treatment plant may facilitate population growth in the service area due to the increase in sewage treatment capacity and may lead to an increase in air pollution." (Guidelines, § 15064, subd. (d)(2).) "An indirect physical change is to be considered only if that change is a reasonably foreseeable impact which may be caused by the project. A change which is speculative or unlikely to occur is not reasonably foreseeable." (Guidelines, § 15064, subd. (d)(3).)

A municipal ordinance that merely restates or ratifies existing law does not constitute a project and is therefore not subject to environmental review under CEQA. (See *San Jose Country Club Apartments v. County of Santa Clara* (1982) 137 Cal.App.3d 948, 953-954 (*County of Santa Clara*) [county ordinance that prohibited same type of discrimination already prohibited by state law not subject to CEQA review]; *Black Property Owners Assn. v. City of Berkeley* (1994) 22 Cal.App.4th 974, 985 (*Black Property Owners Assn.*) [city's adoption of updated housing element as part of its general plan not subject to CEQA review to the extent it readopted existing policies without

8

change].)  This is because the purpose of environmental review "is to inform the public and responsible officials of the environmental consequences of their decisions *before* those decisions are made."  (*Black Property Owners Assn.*, at p. 986.)  This purpose is not served by requiring environmental review for a new ordinance that merely restates existing law without change.  (*Ibid*.)

" 'Whether a particular activity constitutes a project in the first instance is a question of law.' "  (*CREED-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 503; *Rominger v. County of Colusa* (2014) 229 Cal.App.4th 690, 701-702.)  "Common sense in the CEQA domain is not restricted to the exemption provided by the [Guidelines]. . . . It is an important consideration at all levels of CEQA review."  (*Save the Plastic Bag Coalition v. City of Manhattan Beach, supra*, 52 Cal.4th at p. 175.)

### The 2013 Ordinance Is Not a Project Under CEQA

We conclude the 2013 ordinance is not a project as defined by CEQA.  Although the ordinance satisfies the first prong of the definition because it is "[a]n activity directly undertaken by [a] public agency" (§ 21065; Guidelines, § 15378; see *Santa Monica Chamber of Commerce v. City of Santa Monica, supra*, 101 Cal.App.4th at p. 788, fn. 2), it does not satisfy the second prong because it merely restates the prohibition on mobile dispensaries that was first imposed by the 2007 ordinance (see *County of Santa Clara, supra*, 137 Cal.App.3d 948 at pp. 953-954; *Black Property Owners Assn., supra*, 22 Cal.App.4th at p. 985), and thus will not "cause either a *direct* physical change in the

9

environment, or a *reasonably foreseeable indirect* physical change in the environment" (§ 21065, italics added; Guidelines, § 15378).[6]

UMMP argues the 2013 ordinance is subject to CEQA because it did not merely restate existing law inasmuch as the 2007 ordinance was a zoning law, the purpose of which "is to regulate the *use* of land" (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 750), not to regulate "activities carried out through vehicular means." We are not persuaded the 2007 ordinance was exclusively a zoning ordinance that regulated only land use.

First, UMMP's reliance on the municipal code's definition of "use" as pertaining to "land or a building" is misplaced.[7] The 2007 ordinance does not use the word "use"—it states "[n]o medical marijuana dispensary . . . shall be permitted in any zone within the city."

Second, the fact the 2007 ordinance was codified in the zoning title of the municipal code is not dispositive. Section 1.01.040 of the municipal code provides that "[t]itle, chapter and section headings contained in this code shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions of any title, chapter or section in this code."

---

[6]     Because we conclude mobile dispensaries were already prohibited by the 2007 ordinance, we need not address the City's contention that they were also prohibited by state and federal law.

[7]     Section 17.14.020 of the City's municipal code defines "[u]se" as "the purpose for which land or a building is arranged, designed, or intended, or for which either land or building is or may be occupied or maintained."

10

Third, the City has the authority to regulate both land uses and other conduct and activities. (See Gov. Code, § 65800, et seq. (authority and procedures for adopting zoning regulations); Cal. Const., art. XI, § 7 ["A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."].) That the City codified the 2007 ordinance in the zoning title is not surprising—the ordinance regulated *fixed* dispensaries, which UMMP concedes is a proper zoning function. But this does not mean the City could not also prohibit *mobile* dispensaries in the City. Indeed, UMMP acknowledges that doing so is "admittedly a proper subject of the municipal police power." The City invoked this power when it adopted the 2007 ordinance.

Fourth, UMMP wrongly asserts the 2007 ordinance "provided, legally, no impediment . . . to the operation of mobile . . . dispensaries . . . because [it] was a zoning ordinance." The City could enforce a violation of the 2007 ordinance by bringing an action to abate a nuisance. (See, e.g., *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1091-1096 [affirming summary judgment declaring medical marijuana dispensary a public nuisance where dispensaries were not permitted by local zoning law].)

Finally, UMMP ignores distinctions within the City's municipal code when comparing the provisions that regulate recreational vehicles to the provisions added by the 2007 ordinance regarding mobile dispensaries. UMMP asserts that the provision that "prohibit[s] overnight parking or any other use [of recreational vehicles] for habitation purposes" "would hardly be held to prohibit a family that lived in their mobile home from

11

driving through the City in their RV or stopping in the parking lot of the local Wal-Mart to eat lunch."  Therefore, UMMP reasons, although mobile dispensaries may be prohibited from "using a parcel within the City as the base of operations," they are not prohibited from driving in the City or stopping at different locations in the City to do business.  However, the municipal code provisions regulating recreational vehicles and mobile dispensaries differ dramatically—the municipal code permits *certain* uses of recreational vehicles in *certain* parts of the City, whereas it does not permit *any* uses of mobile dispensaries in *any zone*.

Even if we were to conclude the 2013 ordinance did not merely restate existing law, we would nonetheless conclude it did not constitute a project.  The ostensible environmental impacts UMMP cites are based on layers of speculation, and are thus too "speculative or unlikely" to be deemed "reasonably foreseeable."  (Guidelines, § 15064, subd. (d)(3).)

For example, UMMP asserts without support that "there can be *little doubt* that patients who currently obtain their medication from mobile . . . dispensaries will be required to travel greater distances (e.g.[,] outside the City) in order to continue to receive the treatment they need."  (Italics added.)  This assertion *assumes* both that there were residents within the City who were obtaining marijuana from mobile dispensaries (operating in violation of the 2007 ordinance) before the City enacted the 2013 ordinance, and that those residents will begin traveling greater distances to obtain marijuana.

Similarly, UMMP *assumes* that 2 percent of the City's population (1,504 residents) are medical marijuana patients; that those patients use one ounce of marijuana per month;

12

that, "[o]bviously," those patients "*may* establish up to 1,504 home cultivation sites in the City" as a result of the 2013 ordinance; and that the cultivation "*may*" take place indoors because those patients do not live in locations suitable for outdoor cultivation.  (Italics added.)

Finally, UMMP asserts indoor cultivation would negatively impact the environment because it would result in increases in electrical and water consumption, waste plant material and odor, and hazardous waste materials associated with fertilizing and harvesting marijuana plants.  However, UMMP supports this assertion with two studies that address *industrial* marijuana cultivation, and one study that addresses cultivation in Washington state.

In sum, UMMP's cited environmental concerns rest on layers of *assumptions* about (1) the existence of medical marijuana patients within the City; (2) the prevalence of such patients; (3) the patients' usage rates of marijuana; (4) the patients' use of mobile dispensaries; (5) the patients beginning to cultivate their own marijuana in response to the 2013 ordinance; (6) the new cultivation occurring indoors; and (7) the small-scale indoor cultivation having similar environmental impacts as the industrial-scale indoor cultivation discussed in the studies UMMP cites.  Common sense leads us to conclude these concerns are too "speculative and unlikely" to be considered "reasonably foreseeable." (Guidelines, § 15064, subd. (d)(3).)  Therefore, the 2013 ordinance is not a project subject to CEQA.

DISPOSITION

The judgment is affirmed.  The City is entitled to its costs on appeal.


HALLER, J.

WE CONCUR:


NARES, Acting P. J.


IRION, J.